UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMETRIUS MCLAUGHLIN,       )
                          )
        Plaintiff,       )
                          )
     v.                 )  Civil Action No. 06-2048 RMC
                          )
DEPARTMENT OF JUSTICE,      )
    DRUG ENFORCEMENT AGENCY,   )
                          )
        Defendant.       )
_____)

**DEFENDANT'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), the moving Defendant hereby move to dismiss this action.  In the alternative, the Court is asked to enter summary judgment in favor of the moving Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law.[1]  The Court

---

[1]  To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendant.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or

is respectfully referred to the accompanying memorandum and to the statement of material facts accompanying this motion.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
MADELYN JOHNSON, DC Bar #396739
Assistant United States Attorney

_____

opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
DEMETRIUS MCLAUGHLIN,          )
                               )
          Plaintiff,           )
                               )
     v.                        )  Civil Action No. 06-2048 RMC
                               )
DEPARTMENT OF JUSTICE,         )
     DRUG ENFORCEMENT AGENCY,  )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Freedom of Information Act
(FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5
U.S.C. § 552a, and pertains to the processing of Plaintiff's
FOIA/Privacy Act request to the Drug Enforcement Agency (DEA)for
records pertaining to himself.  The declaration of Leila I.
Wassom, Paralegal Specialist, Office of the Chief Counsel,
Administrative Law Section Drug Enforcement Administration
(Wassom Decl.)will explain the scope of the search and the
appropriateness of the exemptions applied.  The  defendant
released all non-exempt documents or portions thereof making
every effort to provide plaintiff with all reasonably segregated
portions of releasable material.  Accordingly, plaintiff's claims
against defendant DEA should be summarily dismissed.

# I. **STATEMENT OF FACTS**

Defendant incorporates herein as its Statement of Facts the Statement of Material Facts Not in Genuine Dispute attached hereto.

# II. **ARGUMENT**

**A**    **Standard for Summary Judgment**

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA or Privacy Act case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. Weisberg v. U. S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency

3

which show that the documents are exempt from disclosure.[2] Summary judgment may be awarded to an agency in a FOIA or Privacy Act case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by evidence ... of bad faith on the part of the agency." Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

Because the defendant here has released all non-exempt responsive documents at issue, plaintiff's Complaint should be summarily dismissed.

## B.    Defendants Have Submitted Proper "Vaughn" Indices

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch, Inc. v. U.S. Dept. of

---

[2] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381,. 1984, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).

These declarations or affidavits (singly or collectively) are

often referred to as a Vaughn index, after the case of Vaughn v.

Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977,

94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn

index.  "[I]t is well established that the critical elements of

the Vaughn index lie in its function, and not in its form."  Kay

v. F.C.C., 976 F.Supp. 23, 35 (D.D.C. 1997).  "The materials

provided by the agency may take any form so long as they give the

reviewing court a reasonable basis to evaluate the claim of

privilege."  Delaney, Midqail & Young, Chartered v. I.R.S., 826

F.2d 124, 128 (D.C.Cir. 1987).  See also Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 349 (D.C.Cir. 1987); Hinton v. Department

of Justice, 844 F.2d 126, 129 (3rd Cir. 1988).[3]

The Vaughn Index serves a threefold purpose: (1) it

identifies each document withheld; (2) it states the statutory

exemption claimed; and (3) it explains how disclosure would

damage the interests protected by the claimed exemption.  See

Citizens Com'n on Human Rights v. Food and Drug Admin., 45 F.3d

---

[3] "All that is required, and that is the least that is required, is
that the requester and the trial judge be able to derive from the
index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure."  Id.  "The
degree of specificity of itemization, justification, and correlation
required in a particular case will, however, depend on the nature of
the document at issue and the particular exemption asserted."
Information Acquisition Corp. v. Department of Justice, 444 F.Supp.
458, 462 (D.D.C. 1978).

1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C.Cir. 1979).

Here, DEA has submitted a supporting declaration and a separate Vaughn index in support of the exemptions taken. The agency declaration was prepared by an individual familiar with the handling of the direct or referred request.

The declaration submitted in support of this motion meet the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provide the Court with the requisite basis to grant Defendant's motion.

**C.    Defendant Conducted A Reasonable Search for Records**

The defendant performed a reasonable search in response to plaintiff's FOIA request. In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records. Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F.Supp. 770, 776 (D.D.C. 1993).

The search standards under the FOIA do not place upon the

6

agency a requirement that it prove that all responsive documents have been located.  Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "the search need only be reasonable; it does not have to exhaustive."  Miller v. U.S. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing, National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183, 186 (D.C.Cir. 1973).  As a result, an agency under the FOIA is not required to search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. U.S. (Dept. of Justice), 578 F.2d 261, 263 (9th Cir. 1978).  The agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every division and office.  See, Marrera v. U.S. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985).

Even when a requested document indisputable exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. C.I.A., 986 F.2d 547, (1st Cir. 1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt

7

v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

## D.   DEA Found Responsive Documents and Released All Responsive, Non-Exempt Records

### 1.   DEA's Search For Responsive Documents Was Reasonable

By letter dated September 15, 2006, the plaintiff requested copies of any and all documents, records, policy and information that were used in connection with the investigation conducted by DEA and the Pasco County, Florida Sheriff's Office of the illegal manufacture of methamphetamine in Pasco County approximately during the period May 2002 through March 2004.  The plaintiff specifically requested information connected to surveillance and equipment used for surveillance, and information about a traffic stop of himself conducted by the Pasco County Sheriff's Office on July 16, 2002, including copies of notes, logs, and reports.  The plaintiff also requested information on the collecting of evidence regarding his criminal case, providing his criminal case number.  The plaintiff promised to pay reasonable search and duplication costs, requesting that he be informed if the estimated costs exceeded $250.00.  Wassom Decl. ¶ 6, and Exhibit A.

By letter dated February 26, 2007, DEA released portions of 18 pages and two pages in their entirety to the plaintiff. Thirteen pages were withheld in their entirety.  Information was withheld pursuant to FOIA exemptions pursuant to FOIA exemptions

8

(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).  The plaintiff was informed that (1) in response to his request for records from criminal case #8:03-CR-226-T-17MSS, DEA does not index records by criminal case number, and (2) that in response to his request for records from the Pasco County, Florida, sheriff's office, DEA the FOIA requires that DEA search and process records under this agency's control and custody, and is not required to obtain records from another agency.  <u>Id</u>. ¶ 7, and Exhibit B.

By letter dated February 27, 2007, pursuant to a litigation review, DEA made a supplemental release of additional portions of pages "8" and "9" to the plaintiff.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).  <u>Id</u>. ¶ 8, and Exhibit C.

SARO is the DEA office responsible for the search for, and the processing and release of information requested under FOIA and PA received by the DEA.  <u>Id</u>. ¶ 5.

The plaintiff's letter was interpreted as a request for criminal investigative records held by DEA that referenced or related to the plaintiff, or were referenced by the plaintiff's name.  Criminal investigative records about the plaintiff and held by DEA were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  <u>Id</u>. ¶ 9.

IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes. No other system of records maintained by DEA would reasonably likely contain the information requested by the plaintiff. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth. Id. ¶¶ 10-12.

On September 19, 2006, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated September 15, 2006. The search was conducted by a SARO Freedom of Information Specialist, pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. Id. ¶ 13.

As a result of the NADDIS query, 35 pages of responsive materials were located. DEA released portions of 18 pages and two pages in their entirety to the plaintiff and 13 pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and

Privacy Act exemption (j)(2).  A Vaughn index detailing DEA's
withholdings has been prepared.  Id. ¶ 14, and Exhibit C.

The DEA undertook an exhaustive search for records
responsive to plaintiff's FOIA requests.  This search resulted in
the location of responsive documents which were provided to
plaintiff or, if withheld, identified.

**E.   Defendant DEA Appropriately Relied on Privacy Act Exemption
       (j)(2)**

Subsection (j)(2) of the Privacy Act exempts the following
records from mandatory disclosure:

> records maintained by an agency or component thereof
> which performs as its principal function any activity
> pertaining to the enforcement of criminal laws,
> including police efforts to prevent, control, or reduce
> crime or to apprehend criminals, and the activities of
>     prosecutors, courts, correctional, probation,
> pardon, or parole authorities, and which consists of
> ...(B) information compiled for the purpose of a
> criminal investigation, including reports of informants
> and investigators, and associated with an identifiable
>     individual; or (C)reports identifiable to an
> individual compiled at any stage of the process of
> enforcement of the criminal laws from arrest or
> indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

**1.   DEA Properly Applied Exemption (j)(2)**

Material was withheld pursuant to Privacy Act, 5 U.S.C. §
552a(j)(2).  IRFS is a Privacy Act System of Records that was
last reported at 66 Fed. Reg. 8425 and last published in its
entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy

Act, rules were promulgated, pursuant to 5 U.S.C. § 552a(j)(2),
to exempt records contained in IRFS from access. 28 C.F.R. §
16.98(c)(3).  Id. ¶¶ 20-21.

In accordance with the Privacy Act, 5 U.S.C. § 552a(b),
except pursuant to a written request by, or with prior written
consent of, the individual to whom the record pertains, no
information relating to a third party was released, unless
required by the FOIA or pursuant to a routine use. No routine use
exists for and the plaintiff did not provide a release
authorization or proof of death for the release of any third
party information.  Thus, the release of information is only that
which is required by FOIA.  Id. ¶ 22.

## F.  The Defendant DEA Appropriately Applied Exemption 2

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the
Government is not required to disclose records "related solely to
the internal personnel rules and practices of an agency."  5
U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types
of materials: (1) internal agency matters so routine or trivial
that they could not be "subject to ... a genuine and significant
public interest" and (2) internal agency matters of some public
interest "where disclosure may risk circumvention" of statutes or
agency regulations.  Department of Air Force v. Rose, 425 U.S.
352, 369-70 (1976); Schiller v. N.L.R.B., 964 F.2d 1205, 1207
(D.C. Cir. 1992); National Treasury Employees Union v. U.S.

12

<u>Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco & Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); <u>Truesdale v. U.S. Dept. of Justice</u>, 2005 WL 3294004, *4 - *5 (D.D.C. 2005); <u>Gonzalez v. Bureau of Alcohol, Tobacco and Firearms</u>, 2005 WL 3201009, *6 (D.D.C. 2005); <u>Dorsett v. U.S. Dept. of Treasury</u>, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); <u>Edmonds v. F.B.I.</u>, 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category." <u>Schiller</u>, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. <u>Martin v. Lauer</u>, 686 F.2d 24, 34 (D.C. Cir. 1982); <u>see also</u> <u>Schiller</u>, 964 F.2d at 1207. "Low (b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. <u>See</u> <u>Schwaner v. Department of Air Force</u>, 898 F.2d 793, 795 (D.C. Cir. 1990); <u>Voinche v. F.B.I.</u>, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. <u>Coleman v. F.B.I.</u>, 13 F.Supp.2d 75, 78-79 (D.D.C. 1998), <u>citing</u>, <u>Lesar v.</u>

U.S. Dept. of Justice, 636 F.2d 472 (D.C. Cir. 1980); see also
Schiller, 964 F.2d at 1208 (protecting from disclosure internal
agency time deadlines and procedures, recordkeeping directions,
instructions on which agency official to contact for assistance,
and guidelines on clearance procedures); Nix v. United States,
572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of
merely internal significance); Scherer v. Kelley, 584 F.2d 170,
175-78 (7th Cir. 1978)(protecting "file numbers, initials,
signature and mail routing stamps, references to interagency
transfers, and data processing references"); Voinche, 46
F.Supp.2d at 30 (protecting the file number for an informant and
telephone extension of the Public Corruption Unit of the FBI's
Criminal Investigation Unit); Wilson v. Department of Justice,
1991 WL 111457, at *2 (D.D.C. 1991)(protecting transmittal slips
from low level officials).  The notion behind this reasoning is
that administrative agencies should not be burdened by responding
to requests for trivial information unlikely to be the subject of
public interest.  Martin, 686 F.2d at 34.

    Exemption "high (b)(2)" exempts from mandatory disclosure
documents relating to more substantive internal matters.  See
Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).
Withholding is permitted in this category to the extent that
disclosure would reveal techniques and procedures for law
enforcement investigations or prosecutions, Id., would disclose
guidelines for law enforcement investigations, or would risk
circumvention of an agency statute or impede the effectiveness of

an agency's law enforcement activities.   See Crooker; Hardy v.
ATF, 631 F.2d 653, 656 (9th Cir. 1980).

1.   **DEA Properly Applied Exemption 2**

Pursuant to DEA rules and practices as indicated in the DEA
Agents Manual, many of the pages in this case contain "violator
identifiers" consisting of G-DEP (Geographical Drug Enforcement
Program) codes, NADDIS, and confidential informant numbers that
are part of DEA's internal system of identifying information and
individuals.  Wassom Decl. ¶ 24.

> (a) G-DEP codes are assigned to all DEA cases at the
> time the case file is opened and indicate the
> classification of the violator, the types and amount of
> suspected drugs involved, the priority of the
> investigation and the suspected location and scope of
> criminal activity.  Id.
> (b) NADDIS numbers are multi-digit numbers assigned to
> drug violators and suspected drug violators known to
> DEA and entities that are of investigative interest.
> Each number is unique and is assigned to only one
> violator within the DEA NADDIS indices.  (The NADDIS
> indices are exempt from the access provisions of the
> Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98
> (2006).  Knowledge of the NADDIS number provides a
> means of finding out not only drug violator information
> about the subject but also personal information about
> himself, relatives and any third parties identifiable
> with the violator.  Thus, Exemption (b)(7)(C) was used
> in conjunction with (b)(2) to withhold third- party
> NADDIS numbers.  Id.
> (c) Confidential source identifier codes are assigned
> by DEA and other law enforcement agencies to
> cooperating individuals and are used instead of their
> names in all DEA reports, memoranda and other internal
> correspondence. Informant identifier codes provide
> sensitive information about individuals who
> cooperate with DEA and other law enforcement agencies
> in carrying out their law enforcement functions.
> Knowledge of identifier codes can assist in identifying
> the informant and provide sensitive information about
> individuals who cooperate with DEA in carrying out its
> law enforcement functions. Exemptions(b)(7)C),(b)(7)(D)

15

and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identifier codes.  Id.

The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities.  Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.  All G-DEP codes found in the responsive pages are withheld.  Id. ¶ 25.

NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies.  They are assigned by DEA for internal use and there is no public interest in the release of these codes.  Id. 26.

## G.   Defendant DEA Properly Applied Exemption 7 (C)

Exemption 7 (C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Supreme Court has affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S. 157 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officer and other government employees).   When a

16

criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340 (quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982)).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Favish, S. Ct. at 1580-82; U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested."  Reporter's Committee, 489 U.S. at 772.

17

Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. F.B.I., 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of the Com. of Puerto Rico on Behalf of Judiciary Committee v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2d Cir. 1981). "[T]he only public interest relevant for purposes of Exemption 7 (C) is one that focuses on 'the citizens' right to be informed about what their government is up to." Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773 (internal quotation marks omitted). Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure (of third-party identities)is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir. 1991). Our court of appeals has held "categorically" that "unless access to names and addresses of

private individuals appearing in files within the ambit of Exemption 7 (C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at, 780); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity,'" quoting Dunkelberger v. Department of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990). Indeed, an agency may categorically assert Exemption 7 (C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C. Cir. 1980).

19

Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The Vaughn index provided reflects clearly that Exemption 7(C) was appropriately applied in this case to protect names and personal information.

In this instance, the plaintiff provided no facts to show any public interest that would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy. Wassom Decl. ¶ 30.

In asserting this Exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under Exemption b(7)(C), and

release of any information about a third party would constitute
an unwarranted invasion of that third party's personal privacy.
Id. ¶ 31.

The identities of DEA Special Agents, and other Federal,
state/local law enforcement officers and personnel were withheld.
Releasing their identities and information pertaining to these
individuals would place the Special Agents, and other law
enforcement officers third parties in a position that they may
suffer undue invasions of privacy, and potential harassment from
disclosure of their identities in the context of a criminal law
enforcement investigatory file.  Id. ¶ 32.

The Special Agents and other law enforcement officers and
personnel were assigned to handle tasks relating to the official
investigation into the criminal activities of the plaintiff and
other individuals.  They were, and possibly still are, in
positions of access to information regarding official law
enforcement investigations.  If their identities are released,
they could become targets of harassing inquiries for unauthorized
access to information pertaining to ongoing and closed
investigations.  There is no public interest to be served by
releasing the identities of DEA agents.  Id. ¶ 33.

The identities of government employees, including DEA
Special Agents, state/local law enforcement officers, and a DEA
non-drug evidence custodian were withheld.  Releasing their
identities and information pertaining to these individuals would
place them in such a position that they may suffer undue

21

invasions of privacy, and potential harassment from disclosure of their identities in a criminal law enforcement investigatory file.  Id. ¶ 34.

**H.    Defendant DEA Properly Applied Exemption 7 (D)**

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[4]

When invoking Exemption 7(D), the agency must demonstrate that the information was compiled for a law enforcement purpose,

---

[4]  The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity. United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993). If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case. Landano, 508 U.S. at 179-80. The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Id. at 179. However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome. In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" Parker v. Department of Justice, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

    The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." Id. at 181. In applying these factors, a key consideration is the potential for retaliation against the

23

source.  _Id_. at 179-180; _see also_, _Williams v. FBI_, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); _Hale v. Dept. of Justice_, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  _Pollard v. FBI_, 705 F.2d 1151, 1155 (9th Cir. 1983); _see also_ _Stone v. Defense Investigative Serv._, 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); _Doe v. U.S. Dept. of Justice_, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity").  The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  _Parker v. Department of Justice_, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests

under Exemption 7(D)"); <u>Jones v. FBI</u>, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure"). Therefore, "once the agency receives information from a '"confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" <u>Parker</u>, 934 F.2d at 380 (editing by the court, <u>quoting</u> <u>Lesar v. United States Dep't of Justice</u>, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, <u>Ortiz v. HHS</u>, 70 F.3d 729, 733 (2d Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1136 (1996), and after the death of the source.  <u>Campbell v. Dept. of Justice</u>, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of Exemption (b)(7)(D) to determine whether confidentiality was expressed or implied. Wassom Decl. ¶ 36.

As an agency charged with law enforcement authority, DEA relied on Exemption (b)(7)(D) to protect source-identifying and source-supplied investigative information.  The information at issue here pertains to coded confidential informants with express assurances of confidentiality and sources of information where implied confidentiality applies.  Because of the nature of DEA'S

criminal investigations, any information that could identify these informants including the informant identifier codes could subject them to serious harm, substantial repercussions, and possibly even death.  Id. ¶ 37.

### EXPRESS CONFIDENTIALITY –CODED INFORMANTS

Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA. Such cooperative arrangements are established and maintained according to DEA policy and procedure.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  They are also assured that their names will not be used in DEA investigative materials. They are assigned an identification code which is used in place of their name or referred to as CI. Id. ¶ 38.

### SOURCES WITH IMPLIED CONFIDENTIALITY

When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.  Id. ¶ 39.

The plaintiff was convicted of conspiracy to manufacture methamphetamine and possession of pseudoephedrine.  It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence

is inherent in the trade in illicit substances such as methamphetamine, if their identities or the information they provided was revealed.  Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.  Id. ¶ 40.

Pages "13" through "17" comprise a 5 page ROI containing the debriefing of a coded informant, who provided information about the drug trafficking and other criminal activities of third parties and the plaintiff.  Information about the plaintiff is found in one sentence on page "15", and in the Indexing Section on page "17".  The information about the plaintiff on page "15" is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a coded informant.  The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business. Id. ¶ 41.

Pages "18" through "20" comprise a three page ROI containing the initial debriefing of a coded informant, who provided information about his/her interaction with the plaintiff, and the drug trafficking activities of the plaintiff and third parties. Information about the plaintiff is found throughout page "18", and his name is mentioned in the Indexing Section on page "20".

27

The plaintiff's name is not mentioned on page "19". The information about the plaintiff on page "18" is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a coded informant. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business. Id. ¶ 42.

Page "25" is a one page ROI containing an interview of a named confidential source, who provided information about his/her drug-related interaction with the plaintiff and third parties. The information about the plaintiff on the page is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a confidential source. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business. Id. ¶ 43.

I.  **Defendant DEA Properly Applied Exemption 7(F)**

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter Exemption 7(F)) protects from mandatory disclosure

28

information compiled for law enforcement purposes if disclosure
would reasonably be expected to endanger the life or physical
safety of any individual, 5 U.S.C. § 552 (b)(7)(F).  Courts have
consistently upheld the application of this exemption to protect
information identifying law enforcement officers, and special
agents who are especially likely to be in contact with violent
suspects.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977);
Albuquerque Pub. Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal
v. Bennsinger, 543 F. Supp. 38, 48 (M.D.Pa. 1981); Nunez v. Drug
Enforcement Administration, U.S. Dept. of Justice, 497 F. Supp.
209, 212 (S.D.N.Y. 1980).  Although this Exemption applies to
information that is also subject to the protection of Exemption 7
(C), supra, there is no balancing required with the use of
Exemption 7(F) and it is difficult to imagine any public interest
that could outweigh the safety of an individual.

     The names of  DEA Special Agents, Supervisory Special
Agents, and Pasco County, Florida law enforcement officers were
withheld in accordance with 5 U.S.C. § 552 (b)(7)(F).  Exemption
(b)(7)(F) sets forth an exemption for records or information
compiled for law enforcement purposes the disclosure of which
could reasonably be expected to endanger the life or physical
safety of an individual.  Id. ¶ 44.

     DEA Special Agents and Supervisory Special Agents, as well
as members of other law enforcement entities, are frequently
called upon to conduct a wide variety of investigations,
including sensitive and dangerous undercover operations.  Id. ¶

29

45.

Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations. Id. ¶ 46.

In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C). Id. ¶ 47.

J.    **Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Central, Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". <u>Mead Data</u>, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

Defendant DEA has produced all segregable information contained in their respective file records.  To demonstrate that all reasonably segregable material has been released, the agency must show "with reasonable specificity" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, defendant DEA found that no information was segregable from exempted information.  See Wassom Decl. ¶¶ 48-54, and Vaughn Index submitted therewith.  Because no non-exempt information was found in relation to documents withheld in full, it was not possible to further segregate.  Id.

### III.  CONCLUSION

Defendant Drug Enforcement Administration has demonstrated herein that they responded properly to plaintiff's FOIA request, releasing to him all records and portions thereof not exempted from disclosure.  Accordingly, defendant respectfully requests that its Motion to Dismiss or for Summary Judgment be granted.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____
MADELYN JOHNSON, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
DEMETRIUS MCLAUGHLIN,              )
                                  )
        Plaintiff,                )
                                  )
    v.                            )  Civil Action No. 06-2048 RMC
                                  )
DEPARTMENT OF JUSTICE,            )
    DRUG ENFORCEMENT AGENCY,      )
                                  )
        Defendant.                )
_____  )
```

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), the defendant hereby submits the following statement of material facts as to which there is no genuine issue. The declaration of, Leila I. Wassom, Paralegal Specialist, Office of the Chief Counsel, Administrative Law Section Drug Enforcement Administration supports this statement:

1. By letter dated September 15, 2006, the plaintiff requested copies of any and all documents, records, policy and information that were used in connection with the investigation conducted by DEA and the Pasco County, Florida Sheriff's Office of the illegal manufacture of methamphetamine in Pasco County approximately during the period May 2002 through March 2004. The plaintiff specifically requested information connected to surveillance and equipment used for surveillance, and information about a traffic stop of himself conducted by the Pasco County Sheriff's Office on July 16, 2002, including copies of notes,

logs, and reports.  The plaintiff also requested information on
the collecting of evidence regarding his criminal case, providing
his criminal case number.  The plaintiff promised to pay
reasonable search and duplication costs, requesting that he be
informed if the estimated costs exceeded $250.00.  Declaration of
Leila I. Wassom(Wassom Decl.)¶ 6, and Exhibit A.

   2.  By letter dated February 26, 2007, DEA released portions
of 18 pages and two pages in their entirety to the plaintiff.
Thirteen pages were withheld in their entirety.  Information was
withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C),
(b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).  The
plaintiff was informed that (1) in response to his request for
records from criminal case #8:03-CR-226-T-17MSS, DEA does not
index records by criminal case number, and (2) that in response
to his request for records from the Pasco County, Florida,
sheriff's office, the FOIA requires that DEA search and process
records under DEA's control and custody, and does not require
that DEA obtain records from another agency.  Id. ¶ 7, and
Exhibit B.

   3. By letter dated February 27, 2007, pursuant to a
litigation review, DEA made a supplemental release of additional
portions of pages "8" and "9" to the plaintiff.  Information was
withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), and
(b)(7)(F).  Id. ¶ 8, and Exhibit C.

   4. The plaintiff's letter was interpreted as a request for
criminal investigative records held by DEA that referenced or

2

related to the plaintiff, or were referenced by the plaintiff's name. Criminal investigative records about the plaintiff and held by DEA were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. Id. ¶ 9.

5.  IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes. No other system of records maintained by DEA would reasonably likely contain the information requested by the plaintiff. Id. ¶¶ 10-11.

6. The DEA Freedom of Information Operations Unit (SARO)is the office responsible for responding to, the search for, and the processing and release of information requested under the FOIA and PA received by the DEA.  Id. ¶¶ 4-5.

7. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation.  Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.  Id. ¶ 12.

8. On September 19, 2006, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated September 15,

2006.  The search was conducted by a SARO Freedom of Information Specialist, pre-processor, who used the plaintiff's name, Social Security Number, and date of birth.  Id. ¶ 13.

9. As a result of the NADDIS query, 35 pages of responsive materials were located.  DEA released portions of 18 pages and two pages in their entirety to the plaintiff and 13 pages were withheld in their entirety.  Information was withheld pursuant to FOIA exemptions pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).  Id. ¶ 14, and Exhibit C.

10. The responsive material consisted of:

(a). 12 DEA ROIs;
(b). one (1) DEA Personal History Report;
(c). one (1) DEA Defendant Disposition Report;
(d). two (2)  DEA Acquisition of Non-Drug Property and Regulatory Seizures;
(e). three (3) Report of Drug Property Collected, Purchased or Seized;
(f). one (1) page containing copies of photographs; and
(g). one (1) Federal Bureau of Investigation (FBI) fingerprint card

Id. ¶ 15.

11. The investigative information responsive to plaintiff's request is criminal investigatory material compiled for law enforcement purposes.  The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 et seq., and placed into DEA investigative case files that are maintained in IRFS.  Id. ¶ 16.

12. All of the responsive information was examined to

4

determine whether any reasonably segregable information could be released.  Pages were withheld in their entirety only where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.  Id. ¶ 43, and Vaughn Index.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney



_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____
MADELYN JOHNSON, DC Bar #396739
Assistant United States Attorney

5

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that on March 7, 2007, plaintiff was served with a copy of the foregoing Motion to Dismiss or in the Alternative, Summary Judgment via first-class mail postage prepaid and addressed:


Demetrius McLaughlin
R41297-018
Coleman Federal Correctional Complex
PO Box 1033
Coleman, FL 33521


                    _____/s/_____
                    Madelyn E. Johnson
                    Assistant U.S. Attorney
                    555 4th Street, N.W., Rm. E4114
                    Washington, D. C.  20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
DEMETRIUS MCLAUGHLIN,              )
                                  )
        Plaintiff,                )
                                  )
    v.                            )  Civil Action No. 06-2048 RMC
                                  )
DEPARTMENT OF JUSTICE,            )
    DRUG ENFORCEMENT AGENCY,      )
                                  )
        Defendant.                )
_____)
```

**ORDER**

UPON CONSIDERATION of the Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment, the grounds stated therefore, and the entire record herein, it is this ___ day of _____, 2007, hereby

ORDERED that Defendant's motion should be and it hereby is granted; and it is,

FURTHER ORDERED that plaintiff's complaint be and hereby is dismissed as to the defendant Drug Enforcement Agency.

_____
UNITED STATES DISTRICT JUDGE

MADELYN JOHNSON
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530

Demetrius McLaughlin
R41297-018
Coleman Federal Correctional Complex
PO Box 1033
Coleman, FL 33521

# EXHIBIT A

FROM: DEMETRIUS MCLAUGHLIN
      REG#41297-018
      FCC COLEMAN-USP
      COLEMAN, FL,33521

                                  September 15,06

TO: FREEDOM OF INFORMATION OFFICER
    DRUG ENFORCEMENT AGENCY(DEA)
    Chief,FOIA Section
    Rm.W-9168,LP-2
    WASHINGTON,D.C.20535

        Dear Sir or Ms..:

        This letter serves as my request pursuant to the provision
of the Freedom of information Act (5 U.S.C.§552 ) and Privacy Act
( 5 U.S.C.§552a)(d)(1) and applicable to state statute governing
the Freedom of Information Act request.

        Please send me copies of **any** and **all** documents records  policy
and information that were used in connection with the investigation
that were conducted by the Pasco County Sheriff Office Detectives and
Deputies and where this Drug Enforcement Agency of the Middle District
of Florida Tampa Division which jion and participated in the investig-
ation of the illegal manufacturing of methamphetamine in the area of
Pasco County on or approximately May 2002 through March 2004. This
request is sought specifically for memdment, deletion and/or expung-
ment ( 5U.S.C.552a(d)(2)(a) of records maintained by your agency. The
records sought but not limited to,is the compiled file in case#8:03-
CR-226-T-17MSS containing,

        1. This includes copies of any and all documents,records and
information that were connected to the surveillance that were used
and its equipement, A. such as the Aviation Unit of the Pasco County
helicopter,flightplan,signin sheet,signout sheet,and the aviation
sheet on the months of July 16,02 times 5pm 8pm,and August 10,02,
times 4pm,8pm.

        2.This includes copies of any and all documents records policy
an information on holding tape recording of radio communication and

                              [1]



and the making of radio transcripts in connection with a investigation this includes the communication for July 16,2002 of the investigative stop conducted by Pasco County Sheriff Office Detectives of Reqester. This is not limited to any photos that were taken.

3. Requesting any and all copies of documents,records, and information, policy in connection with the traffic stop conduct by Pasco County Sheriff Office Detectives and its Deputies on July 16, 2002 of Requester on Old Lakeland Highway North Lynbrook Road. Which were part of the ongiong investigation.

4. Requsting any and all copies of documents,records policy an information on the collecting of evidence and distroy of the evidence in this case no. 8:03-CR-226-T-17MSS. This wolud include the photos that were taken of the said evidence.

5. Requsting any an all copies of documents, records and information ,policy, of the notes logs,reports, memorandums,in connection to the on going investigation. This would include notes, logs and reports that were taken on July 16,2002 of the surveillance that were conducted durning the investigation.

6. This includes any an all documents, records,policy and information on the closing on the investigation In this case no.8:03-CR-266-T-17MSS such as final reports, notes, and photos of said evidence.

As you know, the Freedom of Information Act provides that if portion of a document are exempt from release,the remainder must be segregated and  disclosed.Therefore,I will expect you to send me all nonexempt portions of the records which I have requested, and ask that you justify any deletion with reference to specific exemptions of FOIA. The information requested is not to be used for commercial benefit,so I do not expect to be charge fees for your review of the material to see if it falls with in one of FOIA's exemptions.

I promise to pay reasonable search and duplication costs in connection with this requesting. However,please notify me ahead of time if you estimate that total fees will exceed, $250 so I can approve the additional amount.

[2]

7. This is to include any an all documents records and information in connection to the interviews,reports completed by this agency in the course of the investigation through May,2002 to March,2004. This includes Pasos county Sherriff Office as well.

## CERTIFICATE OF SERVICE

I do,hereby certify that a copy hereof has been furish by U.S. Mail to the above address this _15_ day September,2006.

Respectfully  Submitted |

DEMETRIUS MCLAUGHLIN
REG#41297-018
FCC COLEMAN-USP
P.O.BOX 1033
COLEMAN,FL,33521-1033

[3]

U.S. Department of Justice

## Certification of Identity



---

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]  DEMETRIUS ANTWON MCLAUGHLIN

Citizenship Status [2]  UNITED STATES OF AMERICA    Social Security Number [3] 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

Current Address  UNITED STATES PENITENTIARY P.O.BOX 1033[1] COLEMAN[1]FL,33521-1033

Date of Birth  11-07-73    Place of Birth  LAKELAND,FLA,

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4]  *Deel M[...]*    Date  9-15-06

---

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

DEMETRIUS  MCLAUGHLIN

### Print or Type Name

---

[1] Name of individual who is the subject of the record sought.
[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[4] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 4-31-07

FORM DOJ-361
SEPT 04

# EXHIBIT B



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

FEB 2 6 2007

Mr. Demetrius McLaughlin
FCC Coleman - USP
P.O. Box 1033
Coleman, FL 33521-1033

Re: *Demetrius McLaughlin v. Drug Enforcement Administration,* C.A. 06-0960
    DEA Request No. 07-0195-P

Dear Mr. McLaughlin:

Enclosed please find portions of 20 pages and two (2) pages in their entirety. The enclosed material is released in response to your Freedom of Information/Privacy Act (FOIA/PA) request to the Drug Enforcement Administration (DEA) dated September 15, 2006. Thirteen pages are withheld in their entirety. Information is withheld pursuant to the Privacy Act (PA), 5 U.S.C. § 552a, (j)(2), and the Freedom of Information Act,5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), (b)(7)(C), (b)(7)(D) and (b)(7)(F).

Your September 15, 2006, letter was interpreted as a request for investigative information that related to you for the period of May 2002 through March 2004. Although your request alludes to information that may be available or held by the Pasco County Sheriff's Office, the FOIA requires only that DEA search for records under the control and custody of this agency at the time the search is conducted, but does not require that the DEA acquire information held by any other entity. If you wish to obtain records from another law enforcement entity, contact that agency directly. In addition, DEA does not index records by a court assigned case docket number. Thus, other records that may related to the criminal case cannot be identified based on the information you provided.

Based upon your request, a total of 35 pages of responsive materials was located. All information responsive to your request is criminal investigatory data compiled for law enforcement purposes. The information was compiled and maintained in the DEA Investigative Reporting and Filing System (IRFS) pursuant to DEA's law enforcement responsibility which is the enforcement of Federal drug laws. The material was identified using the DEA Narcotics and Dangerous Drugs Information System (NADDIS). NADDIS is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA

Mr. Demetrius McLaughlin                                                    Page 2
February 26, 2007

Form-6 or other documents, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

IRFS is a Privacy Act System of Records for which records are exempt from access pursuant Privacy Act Exemption (j)(2). Accordingly, DEA is only required, in this instance, to release only that information required by the FOIA. As such, the FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency. Pursuant to Exemption (b)(2), DEA withholds "violator identifiers." These identifiers are part of DEA's internal system of identifying individuals and information for which there is no public interest in their release of these codes. DEA withholds G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and DEA coded informant codes.

The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Where the pages contain names and addresses and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the subject of the investigation, the individual's names and other identifying information were withheld to protect the disclosure of their identities.

In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the privacy interests outweighed any potential interest. Thus, disclosure of certain identities would be an unwarranted invasion of their personal privacy. When withholding information pursuant to exemption (b)(7)(C), DEA balances the privacy interests of the individuals mentioned in the responsive information against any public interest in disclosure.

The identities of government employees, including DEA Special Agents, were withheld on the documents, pursuant to (b)(7)(C). Releasing their identities and information pertaining to these individuals would place each of these persons in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file. The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source.

The names of DEA Special Agents and other personnel were withheld pursuant to the FOIA, 5 U.S.C. § 552 (b)(7)(F), which sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual. DEA Special Agents and Supervisory Special Agents, as well as other law enforcement personnel, are frequently called upon to

Mr. Demetrius McLaughlin                                                                 Page 3
February 26, 2007


conduct a wide variety of investigations, including sensitive and dangerous undercover
operations and in foreign countries. This information was also withheld pursuant to Exemption
(b)(7)(C), and, in conjunction with Exemption (b)(7)(D), where confidentiality is asserted.



                                        Sincerely,


                                        William C. Little, Jr.
                                        Senior Attorney
                                        Administrative Law Section


Enclosures


CCA Chron
CCA File    02/26/07
Document Name:H:lwassom/correspondence/DetermLtr.wpd.2/26/07

# EXHIBIT C




**U. S. Department of Justice**

Drug Enforcement Administration

Office of Chief Counsel

Administrative Law Section

---

*www.dea.gov*

Mr. Demetrius McLaughlin
FCC Coleman - USP
P.O. Box 1033
Coleman, FL 33521-1033

Re: *Demetrius McLaughlin v. Drug Enforcement Administration,* C.A. 06-0960
    DEA Request No. 07-0195-P

Dear Mr. McLaughlin:

Enclosed please find portions of two (2) pages in further response to your Freedom of Information/Privacy Act (FOIA/PA) request to the Drug Enforcement Administration (DEA) dated September 15, 2006. The pages, numbered "8" and "9", were released to you by DEA letter dated February 26, 2007. DEA continues to withhold information on the pages pursuant to the Privacy Act (PA), 5 U.S.C. § 552a, (j)(2), and the Freedom of Information Act, 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), ) and (b)(7)(F).

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

CCA Chron
CCA File  *02/27/07*
Document Name:H:lwassom/corresp/suprelltr.wpd02/27/07

# VAUGHN INDEX

## PAGE ITEMIZATION

**PAGE NUMBER:**    1
**DOCUMENT TYPE:** DEFENDANT DISPOSITION REPORT (DEA 210)

**DATE:**    DECEMBER 6, 2004

( X ) **RELEASED**
(    ) **WITHHELD**

**TO:** CRIMINAL INVESTIGATIVE FILE

**FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 5 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| BLOCKS 24, 25 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME(S)OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:** 2 - 3
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202) PAGES 1 AND 2 OF 2

**DATE:**    JUNE 18, 2003

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES OF INDIVIDUALS/PERSONAL INFORMATION |
| PAGE 1: BLOCKS 5, 45 & 46 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE & CRITERIA |
| PAGE 1: BLOCKS 43b, 44b | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS INDENTIFIER CODES |
| PAGE 2: BLOCKS 68, 69, 71, 72, 74, 75 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C)  (b)(7)(F) | NAMES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**    4
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY/ REGULATORY SEIZURES (DEA 7A)

**DATE:**    MARCH 5, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:** CRIMINAL INVESTIGATIVE FILE

**FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 5 & 8 | THIRD-PARTY NAME | (b)(7)(C) | THIRD-PARTY NAME |
| BLOCKS 16, 14 & 18 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**    5
**DOCUMENT TYPE:** REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED (DEA 7)

**DATE:**    JULY 25, 2002

( X ) **RELEASED**
(    ) **WITHHELD**

**TO:** CRIMINAL INVESTIGATIVE FILE

**FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 3 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 16, 17 & 18 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |

## PAGE ITEMIZATION

**PAGE NUMBER:**   6
**DOCUMENT TYPE:** REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED (DEA 7)

**DATE:**   JULY 25, 2002

{ X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 3 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 16, 17 & 18 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF  SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   7

**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY & REGULATORY SEIZURES (DEA 7A)

**DATE:**      UNKNOWN

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  TASK FORCE SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15, 17, 18, 20 & 21 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS, LAW ENFORCEMENT OFFICER, & SUPPORT PERSONNEL |

## PAGE ITEMIZATION

**PAGE NUMBER:**   8

**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY & REGULATORY SEIZURES (DEA 7A)

**DATE:**   MARCH 12, 2004

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  TASK FORCE SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15, 17, 18, 20 & 21 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF  SPECIAL AGENTS, LAW ENFORCEMENT OFFICER, & SUPPORT PERSONNEL |

**PAGE ITEMIZATION**

**PAGE NUMBER:** 9
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**    DECEMBER 6, 2004

( X ) **RELEASED**
(    ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9, 12 & 14; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES    OF SPECIAL AGENT, & LAW ENFORCEMENT OFFICERS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| PARA 2 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF ATTORNEY |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   10
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**     OCTOBER 22, 2004

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF  SPECIAL AGENTS, & LAW ENFORCEMENT OFFICERS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   11
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**      MARCH 12, 2004

                                      ( X ) **RELEASED**
                                      (   ) **WITHHELD**

     **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9, 12 & 14; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF  SPECIAL AGENT, & LAW ENFORCEMENT OFFICERS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   12
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**      MARCH 12, 2004

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9,12 & 14; DETAILS: PARA 2; CUSTODY OF EVIDENCE | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| PARA 2 | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | THIRD-PARTY (S) NAME & INVESTIGATIVE DETAILS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  13 - 17
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6A) PAGES 1 - 5 OF 5

**DATE:**  OCTOBER 30, 2003

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY INFORMATION | (b)(7)(C) | INFORMATION RELATED TO THIRD-PARTIES |
| | INFORMATION RELATED TO AND PROVIDED BY A CODED CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION RELATED TO AND IDENTITY OF A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; Pages 2 - 5: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9,12 & 14; | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; PAGES 2-3; BLOCK 3 | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAME(S) AND INFORMATION RELATED TO A THIRD-PARTY |
| PAGE 1: BLOCK 10; PAGES 2 - 3: NARRATIVE PARA 1 - 9 | INFORMATION RELATED TO THE IDENTITY OF AND PROVIDE BY A CONFIDENTIAL SOURCE NUMBER | (b)(7)(D) | INFORMATION RELATED TO AND PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGES 4 - 5: INDEXING SECTION | THIRD-PARTY NAMES AND IDENTIFYING INFORMATION | (B)(7)(C) | INFORMATION RELATED TO A THIRD-PARTY |
| | THIRD-PARTY IDENTIFIERS | (b)(2) | THIRD-PARTY NADDIS NUMBER |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   18 - 20
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6A) PAGES 1 - 3 OF 3

**DATE:**      OCTOBER 30, 2003

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY INFORMATION | (b)(7)(C) | INFORMATION RELATED TO THIRD-PARTIES |
| | INFORMATION RELATED TO AND PROVIDED BY A CODED CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION RELATED TO THE IDENTIFICATION OF AND PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; Pages 2 - 5: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9,12 & 14; | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; PAGES 2-3; BLOCK 3 | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAME(S) AND INFORMATION RELATED TO A THIRD-PARTY |
| PAGE 1: BLOCK 10; PAGES 2-3: NARRATIVE PARA 1 - 9 | INFORMATION RELATED TO THE IDENTITY OF AND PROVIDE BY A CONFIDENTIAL SOURCE NUMBER | (b)(7)(D) | INFORMATION RELATED TO AND PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 2: BLOCK 10: | CONFIDENTIAL SOURCE CODE | (b)(2) | CONFIDENTIAL SOURCE CODE |
| PAGE 3: INDEXING SECTION | THIRD-PARTY NAMES AND IDENTIFYING INFORMATION | (B)(7)(C) | INFORMATION RELATED TO A THIRD-PARTY |
| | THIRD-PARTY IDENTIFIERS | (b)(2) | THIRD-PARTY NADDIS NUMBER |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  18 – 20
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6A) PAGES 1 – 3 OF 3

**DATE:**      OCTOBER 30, 2003

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY INFORMATION | (b)(7)(C) | INFORMATION RELATED TO THIRD-PARTIES |
| | INFORMATION RELATED TO AND PROVIDED BY A CODED CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION RELATED TO THE IDENTIFICATION OF AND PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; Pages 2 – 5: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9,12 & 14; | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; PAGES 2 – 3; BLOCK 3 | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAME(S) AND INFORMATION RELATED TO A THIRD-PARTY |
| PAGE 1: BLOCK 10; PAGES 2-3: NARRATIVE PARA 1 – 9 | INFORMATION RELATED TO THE IDENTITY OF AND PROVIDE BY A CONFIDENTIAL SOURCE NUMBER | (b)(7)(D) | INFORMATION RELATED TO AND PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGES 3: INDEXING SECTION | THIRD-PARTY NAMES AND IDENTIFYING INFORMATION | (B)(7)(C) | INFORMATION RELATED TO A THIRD-PARTY |
| | THIRD-PARTY IDENTIFIERS | (b)(2) | THIRD-PARTY NADDIS NUMBER |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   21
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**      AUGUST 5, 2003

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9, 12, & 14 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICER |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  22
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**  JULY 9, 2003

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14; DETAILS: PARA 3 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   23
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGE 1 OF 2

**DATE:**      JUNE 19, 2003

                                    ( X ) **RELEASED**
                                    (   ) **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

  **FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9, 12 & 14; DETAILS: PARA 4 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| DETAILS: PARA 2, 4 | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | THIRD-PARTY (S) NAME &INVESTIGATIVE DETAILS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  24
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6a) PAGE 2 OF 2

**DATE:**      JUNE 19, 1993

```
                                ( ) RELEASED
                                ( X ) WITHHELD
```

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PARA 4 - 6 | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | THIRD-PARTY (S) NAME &INVESTIGATIVE DETAILS |
| PARA 5 & 6 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| INDEXING SECTION: | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES OF INDIVIDUALS/PERSONAL INFORMATION |
| | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | NADDIS NUMBERS |

## PAGE ITEMIZATION

**PAGE NUMBER:**  25
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**     JULY 30, 2002

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9,12 & 14; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| BLOCK 6; INDEXING SECTION | THIRD-PARTY NAMES | (b)(7)(C) | NAMES OF INDIVIDUALS |
| BLOCK 10, DETAILS: PARA 1, | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO THIRD-PARTIES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  26
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**     JULY 27, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9,12 & 14; DETAILS: PARA 2 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| BLOCK 6; INDEXING SECTION | THIRD-PARTY NAMES | (b)(7)(C) | NAMES OF INDIVIDUALS |
| BLOCK 10, DETAILS: PARA 1, | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO THIRD-PARTIES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  27 – 30
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 –4 OF 5

**DATE:**     JULY 25, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:** CRIMINAL INVESTIGATIVE FILE

**FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: BLOCK 4; Pages 2 – 4: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 9, 12 & 14; pages 1–4: DETAILS PARA 1-5 & 7; PAGES 4: CUSTODY OF EVIDENCE SECTION | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS & LAW ENFORCEMENT OFFICERS |
| PAGE 1: BLOCK 6; PAGES 1-2: DETAILS PARA 1-3; PAGES 2-3; BLOCK 3 | THIRD-PARTY NAME(S) AND INFORMATION | (b)(7)(C) | NAME(S) AND INFORMATION RELATED TO A THIRD-PARTY |
| PAGES 4 – 5: INDEXING SECTION | THIRD-PARTY NAMES AND IDENTIFYING INFORMATION | (B)(7)(C) | INFORMATION RELATED TO A THIRD-PARTY |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   31
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (CONTINUATION) (DEA 6A) PAGE 5 OF 5

**DATE:**      JULY 25, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 3 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| INDEXING SECTION | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) | NAMES OF INDIVIDUALS/PERSONAL INFORMATION |
| | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS NUMBERS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   34 – 35
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202) PAGES 1 AND 2 OF 2

**DATE:**   AUGUST 5, 2003

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**   DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: BLOCKS 5 & 46 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE & CRITERIA |
| PAGE 1: BLOCKS 43b, 44b | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | THIRD-PARTY NADDIS INDENTIFIER CODES |
| PAGE 2: BLOCKS 68, 69, 74 & 75 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C)<br>(b)(7)(F) | NAMES OF SPECIAL AGENTS |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMETRIOUS MCLAUGHLIN, )
 )
Plaintiff, )
 )
v. )
 )  Civil Action No. 06-00960 RMC
DRUG ENFORCEMENT ADMINISTRATION, )
 )
Defendant. )
_____ )

**DECLARATION OF LEILA I. WASSOM**

1.  I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C. From August 1991 to June 2005, I was assigned to the Freedom of Information and Records Management Section, DEA Headquarters.

2.  I review for litigation purposes both the initially processed and appealed Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by DEA. I have performed these duties at DEA since 1991.

3.  My duties require that I am familiar with the policies and practices of DEA regarding the processing and release of information requested under the FOIA/PA, and the application of the FOIA/PA and exemptions for which I have received formal and on the job training.

1

4. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5. SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

6. By letter dated September 15, 2006, the plaintiff requested copies of any and all documents, records, policy and information that were used in connection with the investigation conducted by DEA and the Pasco County, Florida Sheriff's Office of the illegal manufacture of methamphetamine in Pasco County approximately during the period May 2002 through March 2004. The plaintiff specifically requested information connected to surveillance and equipment used for surveillance, and information about a traffic stop of himself conducted by the Pasco County Sheriff's Office on July 16, 2002, including copies of notes, logs, and reports. The plaintiff also requested information on the collecting of evidence regarding his criminal case, providing his criminal case number. The plaintiff promised to pay reasonable search and duplication costs, requesting that he be informed if the estimated costs exceeded $250.00. A copy of the plaintiff's letter dated September 15, 2006, is attached as Exhibit A.

2

7.  By letter dated February 26, 2007, DEA released portions of 18 pages and two pages in their entirety to the plaintiff.  Thirteen pages were withheld in their entirety.  Information was withheld pursuant to FOIA exemptions pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).  The plaintiff was informed that (1) in response to his request for records from criminal case #8:03-CR-226-T-17MSS, DEA does not index records by criminal case number, and (2) that in response to his request for records from the Pasco County, Florida, sheriff's office, DEA the FOIA requires that DEA search and process records under this agency's control and custody, and is not required to obtain records from another agency.  A copy of the DEA letter dated February 26, 2007, is attached as Exhibit B.

8.  By letter dated February 27, 2007, pursuant to a litigation review, DEA made a supplemental release of portions of two pages to the plaintiff.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F).  A copy of the DEA letter dated February 27, 2007, is attached as Exhibit C.

## ADEQUACY OF SEARCH

9. The plaintiff's letter was interpreted as a request for criminal investigative records held by DEA that referenced or related to the plaintiff, or were referenced by the plaintiff's name. .  Criminal investigative records about the plaintiff and held by DEA were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.

10.  IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

11.  No other system of records maintained by DEA would reasonably likely contain the information requested by the plaintiff.

12.  The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation.  Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

13.  On August 19, 2005, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated June 15, 2005.  The search was conducted by a SARO Freedom of Information Specialist, pre-processor, who used the plaintiff's name, Social Security Number, and date of birth.

14.  As a results of the NADDIS query, 35 pages of responsive materials were located.  DEA released portions of 18 pages and two pages in their entirety to the plaintiff and 13 pages were withheld in their entirety.  Information was withheld pursuant to FOIA exemptions pursuant to

4

FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2).

A *Vaughn* index detailing DEA's withholdings has been prepared, and it is attached as Exhibit C.

## DESCRIPTION OF RESPONSIVE MATERIAL

15. The responsive material consisted of:

    (a). 12 DEA ROIs;

    (b).  one (1) DEA Personal History Report;

    (c).  one (1) DEA Defendant Disposition Report;

    (d).  two (2)  DEA Acquisition of Non-Drug Property and Regulatory Seizures;

    (e).  three (3) Report of Drug Property Collected, Purchased or Seized;

    (f).  one (1) page containing copies of photographs; and

    (g).  one (1) Federal Bureau of Investigation (FBI) fingerprint card

16. The investigative information responsive to plaintiff's request is criminal investigatory data compiled for law enforcement purposes.  The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.

17. DEA investigative case files are established by the office commencing an investigation.  The files are titled according to the name of the principal suspect violator or entity known to DEA at

the time the file is opened.  DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

18.  Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file.  This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

19.  Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition Report, and other documents that may serve as a substitute for the forms.

## APPLICATION OF EXEMPTIONS

### Privacy Act Exemption (j)(2)

20.  DEA is component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*  See 28 C.F.R. § 0.100.

21. IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219. In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access. 28 C.F.R. §16.98(c)(3).

22. In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information. Thus, the release of information is only that which is required by the FOIA.

**FOIA Exemption (b)(2) - Internal Personnel Practices and Procedures**.

23. The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.

24. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, most of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

7

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b)  NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA.  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2006).  Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator.  Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third- party NADDIS numbers.

(c) Confidential source identifier codes are assigned to DEA and other law enforcement agencies to  cooperating individuals and are used instead of their names in all DEA reports,  memoranda and other internal correspondence.  Informant identifier codes provide  sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions.  Knowledge of identifier codes can assist in identifying the informant and provide sensitive information about individuals who cooperate with DEA in carrying out its law enforcement functions.  Exemptions  (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identifier codes.

8

25.  The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension create alibis for suspected activities.  Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.

26.  NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies.  They are assigned by DEA for internal use and there is no public interest in the release of these codes.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### Exemption (b)(7) Threshold

27.  DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

28. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.

## FOIA Exemption (b)(7)(C) - Invasion of Privacy

29. The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Many of the documents in the investigative case file contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff. The individuals, which include third-parties, suspects, criminal associates, non-implicated individuals, and law enforcement officers and support personnel, are protected from the disclosure of their identities.

30. In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

10

31. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

32. The identities of DEA Special Agents, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

33. The Special Agents and other law enforcement officers were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents.

11

34.  The identities of government employees, including DEA Special Agents, state/local law

enforcement officers, and a DEA non-drug evidence custodian were withheld.  Releasing their

identities and information pertaining to these individuals would place them in such a position

that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of

their identities in a criminal law enforcement investigatory file.

## FOIA Exemption (b)(7)(D - Confidential Sources and Information Obtained from Confidential Sources

35.  The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled

for law enforcement purposes the disclosure of which could reasonably be expected to reveal the

identity of a confidential source and/or information furnished by a confidential source

36.  Each document or group of related pages that contain material provided by individual(s),

other than a DEA agent, was examined in light of Exemption (b)(7)(D) to determine whether

confidentiality was expressed or implied.

37.  As an agency charged with law enforcement authority, DEA relied on Exemption (b)(7)(D)

to protect source-identifying and source-suppled investigative information.  The information at

issue here pertains to coded confidential informants with express assurances of confidentiality

and sources of information where implied confidentiality applies.  Because of the nature of

DEA'S criminal investigations, any information that could identify these informants including

12

the informant identifier codes could subject them to serious harm, substantial repercussions, and possibly even death.

## Express Confidentiality - Coded Informants

38.  Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  They are also assured that their names will not be used in DEA investigative materials.  They are assigned an identification code which is used in place of their name or referred to as CI.

## Sources with Implied Confidentiality

39.  When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.

40.  The plaintiff was convicted of conspiracy to manufacture methamphetamine and possession of pseudoephedrine.   It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as methamphetamine, if their identities or the information they provided was

13

revealed. Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.

41. Pages "13" through "17" comprise a 5 page ROI containing the debriefing of a coded informant, who provided information about the drug trafficking and other criminal activities of third parties and the plaintiff. Information about the plaintiff is found in one sentence on page "15", and in the Indexing Section on page "17". The information about the plaintiff on page "15" is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a coded informant. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business.

42. Pages "18" through "20" comprise a three page ROI containing the initial debriefing of a coded informant, who provided information about his/her interaction with the plaintiff, and the drug trafficking activities of the plaintiff and third parties. Information about the plaintiff is found throughout page "18", and his name is mentioned in the Indexing Section on page "20". The plaintiff's name is not mentioned on page "19". The information about the plaintiff on page "18" is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a coded informant. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after

14

redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business.

43. Page "25" is a one page ROI containing an interview of a named confidential source, who provided information about his/her drug-related interaction with the plaintiff and third parties. The information about the plaintiff on the page is inextricably intertwined with information about third-parties and/or would disclose the identity of and information provided by a confidential source. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business.

## FOIA Exemption (b)(7)(F) -Safety of Law Enforcement Personnel and Other Individuals

44. The names of DEA Special Agents, Supervisory Special Agents, and Pasco County, Florida law enforcement officers were withheld in accordance with 5 U.S.C. § 552 (b)(7)(F). Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

15

45. DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.

46. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

47. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C).

16

## SEGREGABILITY

48. All of the responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety only where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

49. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

17

50. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

51. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

52. Pages "1", "2" and "3" comprise the Personal History Report of a third party. The plaintiff's name is mentioned only as a criminal associate on page "1." The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). After redacting all withholdable information, only the plaintiff's name would remain and no useful information regarding how the government conducts business.

18

53. Page "24" is the second page of a two page ROI describing the indictment and arrest of the plaintiff and his co-defendants.   The plaintiff's name is mentioned only in the Indexing Section. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F), since after redacting all withholdable information no useful information about how the government conducts business would remain.

54.  Page "31" is the second page of a five page ROI describing the seizure of a methamphetamine lab.   The page contains only the latter portion of the Indexing Section.   The plaintiff's name is not mentioned on the page.   The page is withheld in its entirety pursuant to FOIA exemptions (b)(2) and (b)(7)(C), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business remains.

55.  The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

19

I declare under the penalty of perjury that the foregoing is true and correct.


_3-7-07_                                        _Leila I. Wassom_
  DATE                                           Leila I. Wassom
                                                 Paralegal Specialist
                                                 Office of Chief Counsel
                                                 Drug Enforcement Administration
                                                 Washington, D.C.  20537


20