UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMTRIUS MCLAUGLIN
    Plaintiff

vs.                                                    Civil Action No:06-2048(RMC)

DEPARTMENT OF JUSTICE,
    DRUG ENFORCEMENT AGENCY
    Defendant
_____/

RECEIVED
APR - 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**PLAINTIFF'S MOTION IN OPPOSITION AND OBJECTION TO DEFENDANT MOTION TO DISMISS OR, IN THE ALTERNATIVE SUMMARY JUDGMENT....**

Pursuant to Fed.R.Civ.P. Rule 8 (a) and (b), the moving Plaintiff hereby move in opposition and for the order of denial to Defendant's motion to dimiss or in alternative for summary judgment. For relief, the Court is ask to enter the order granting the motion for judgment of default in favor of the moving Plaintiff, pursuant to Fed.R.Civ.P. Rule 55 (b) (2) and (e), because Defendant's has acted in bad faith in their affidavit and there is still genuine issue in dispute, and in support thereof states the following:

1.) Plaintiff contends that the Defendant's has acted in bad faith in their duty to, first to search the field office of the Tampa branch. In **Fernandez vs. United States Dep't of Justice, 1990 U.S. Dist Lexis 1159**, search included DEA central files in Washington D.C. as well as the DEA Miami Division office files. As a result of defendants failure to search has miss 270 pages including requested evidence, Plaintiff requested photo of all evidence that was recovered see exhibit (A)

see exhibit A, that the 270 pages is responsive to the requested that pertains to DEA branch in Tampa FL and that this response is the Executive Office for United States Attorney in which a request was also sent.

2.) Plaintiff further contends that there is a genuine issue in dispute, and that the requested reports and logs pertaining to surveillance aviation unit for the months of July and August are part of the records requested and exist upon such documents. See exhibit B, of the search warrant application and affidavit page 03 of 04 paragraph 6 of line 4. This is part of the records due to the fact DEA agent Paul Thompson testify to be such and agent also to be working for the agency, see exhibit C, testimony of Paul Thompson 53 of 56 page 55 line 22.

3.) Plaintiff further contends that the Defendant's has failed to disclose the requested material such the picture of the evidence that was recover during this investigation, and that this evidence of such photos do exist see exhibit A, that is on the CD and exhibit D, testimony that the tank was recovered.

4.) It is further contend by the Plaintiff that there is a genuine issue in exist of this dispute and that where Defendant have acted in bad faith in, (1) the failure to search the Tampa Division for the request information and material such as the photos and documents such as the reports, logs, aviation unit reports.

### REQUESTED RELIEF SOUGHT

5.) Plaintiff request that this Court enter the order to relase all requested material such as the photos, reports, documents to the Plaintiff, and dismiss Defendant motion to dismiss or summary judgment.

[2]

## CERTIFICATE OF SERVICE

I CERTIFY that on March 29, 2007, Defendant's was served with a copy of the foregoing Motion in Opposition and Objection, judgment of Default via first-class mail postage prepaid and addressed:

MADELYN E. JOHNSON
Assistant U.S Attorney
555 4th street N.W.
Washington D.C 20530

                                        Respectfully Submitted

                                        DEMETRIUS MCLAUGHLIN
                                        REG#41297-018
                                        FCC COLEMAN-usp
                                        P.O.BOX 1033
                                        COLEMAN, FL  33521

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMETRIUS MCLAUGHLIN
    Plaintiff

vs.　　　　　　　　　　　　　　　Civil Action No:06-2048(RMC)

DEPARTMENT OF JUSTICE,
    DRUG ENFORCEMENT AGENCY,
        Defendant.
_____/

**ORDER**

Upon Consideration of the Plaintiff Motion In Opposition and for Judgment of Default, the grounds state therein, and entire record herein, for this ___ day of _____, 2007 hereby

ORDERED that Plaintiff's motion should be and hereby is granted and it is,

FURTHER ORDER that defendant motion to dismiss or in alternative for summary judgment be and hereby is denied as to the Plaintiff.

                                          _____
                                          United States District Judge

MADELYN JOHNSON
Assistant United States Attorney
Civil Division
555 4th Street N.W
Washington D.C. 20530

DEMETRIUS MCLAUGHLIN
REG#41297-018
FCC COLEMAN-USP
P.O.BOX 1033
COLEMAN,  FL 33521

EXHIBIT   A

In addition, a review of the material revealed:

[ X ]  **272** page(s), **1** CD-R & **1** cassette tape originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** Once we have received the above payment, these records will be referred to the following component(s) listed for review and direct response to you: **Drug Enforcement Administration (DEA)/270 pages, 1 CD-R & 1 cassette tape & United States Marshals Service (USMS)/2 pages**.

[ X ]  There are public records which may be obtained from the clerk of the court or this office, upon specific request. If you wish to obtain a copy of these records, you must submit a new request. These records will be provided to you subject to copying fees.

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Acting Assistant Director

Enclosure(s)



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

MAR 1 2 2007

Requester: **Demetrius McLaughlin**                         Request Number: **06-3274**

Subject of Request: **Self/FLM**

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

    To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [ **X** ] partial [    ] full denial.

  **29**  page(s) are available to be released in full (RIF);
  **12**  page(s) are available to be released in part (RIP);
  **164**  page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    [ **X** ] After reviewing all the documents, we have determined that we can make a partial release. Therefore, 41 pages are available for release to you. In response to our letter to you dated December 11, 2006, you agreed to pay for search and any additional fees for the remaining documents. The first 100 of those pages are free. Search time is charged at a rate of $28 per hour/$7 per quarter and copying at a rate of $0.10 per page. You will receive 2 hours free out of 4.5 hours of search time. A $_____ review, $ **70.00** search, and/or $_____ copying fee is being assessed for these records. If you would like these records, please send a check or money order for    $ **70.00** , payable to the Treasury of the United States. Payment should be mailed to the Freedom of Information Act/Privacy Act Staff, 600 E Street, N.W., Room 7300, Washington, D.C. 20530. **If payment is not received within 30 days from the date of this letter, any future requests for records will be rejected until payment is received.**

(Page 1 of 2)
Form No. 021- fee/bill - 2/06

EXHIBIT   B

# APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT
Page 03 of 04

manufacture of methamphetamine to the rear north side of the house. As CI#2 prepared to leave the residence with Detective Starnes, a resident approached the undercover vehicle and sold $60 dollars of suspected methamphetamine to CI#2. These actions were immediately and clearly visible by Detective Starnes. After the exchange, CI#2 then turned the suspected methamphetamine over to Detective Starnes. Together they exited the area and met with other PCSO Narcotics Detectives at a predetermined meeting location. Later that evening, Detective Starnes conducted a presumptive chemical field test upon the suspect substance and weighed same yielding (0.4) grams. The presumptive test was positive for the presence of amphetamine(s). The methamphetamine and audio tape recording of the transaction were then placed into evidence.

On 8/5/2002, DEA Special Agent Tom Leo and YA interviewed CI#3 about his involvement in procuring anhydrous ammonia used by several persons identified as known "cooks" who are actively manufacturing methamphetamine in Hernando, East Pasco County, and Polk County. CI#3 said he purchases anhydrous ammonia from three to four sources/persons in Polk County for $400 to $500 per tank. CI#3 then takes this material to the methamphetamine "cook." Anhydrous ammonia is a critical component in the manufacture of methamphetamine and can not be purchased easily by members of the general public. CI#3 readily admitted he unlawfully obtained anhydrous ammonia used in a known methamphetamine lab that caught on fire during the month of July 2002 in Zephyrhills, Florida.

During the month of August 2002, CI#4 advised YA of Howze, Meyer and CI#3's action(s) with regard to the acquisition, location of acquisition, and storage of anhydrous ammonia, short rubber hose, five gallon bucket(s), lithium batteries, sulphuric acid, cooking fuel, ephedrine, psuedoephedrine, rock salt and iodized salts for the purpose of manufacturing and selling methamphetamine inside the residence, inside the out-building and along the curtilage/ wooded area of the property located 39011 County Line Road, Crystal Springs, Florida.

Additionally, during this investigative period, YA has monitored ephedrine/psuedoephedrine purchase(s) made by James Edward Howze, Jr. from the SAVE-A-LOT in Dade City, Florida. James Edward Howze, Jr. was identified via a color photo pack line-up by a confidential source from the store as the primary person responsible for buying or directing multiple persons to purchase ephedrine/psuedoephedrine in the maximum allowable quantities per store policy on a weekly basis. Ehphedrine/psuedoephedrine is the pre-cursor ingredient required for the manufacture of methamphetamine.

On August 9th 2002, CI#4, told YA he/she observed James Howze, Jr. preparing the aforementioned materials for the manufacture of methamphetamine in the rear north side of the 39011 County Line Road residence near the green outbuilding. The CI#4 gave YA numerous updates as to the progress of the "cook" or manufacture process. CI#4 said when the manufacture materials were not being used they were stored inside the green colored, out- building, to the north of the residence. CI#4 said Howze manufactured three batches of methamphetamine with a yield of one quarter pound of methamphetamine.

On August 10th, 2002, CI#4 continued to provide YA updates as to ongoing "cooks" of methamphetamine at the Howze residence. CI#4 said methamphetamine was being "cooked" in the clearing in the wooded area just north of the Howze residence. CI#4 said Howze is the primary "cook" and directs Jason Meyer to assist him during various portions of the manufacture process. At approximately 1930 hours, this same day, YA flew over the Howze property in a PSCO helicopter and observed several persons in the clearing exactly where CI#4 said they would be. YA observed a small fire a short distance away from the gathering of persons. Previous intelligence from a separate source advised Howze and others would burn trash in the woods to conceal the smell during the manufacture process.

BASED ON THE FOREGOING, YA has reason to believe and does believe that the premises in question have contained in the past, and do contain now, certain instrumentalities and contraband which constitutes a violation of the laws of the State of Florida, or certain evidence which constitutes proof of a violation of the laws of the State of Florida, and based upon the foregoing requests issuance of a search warrant for the above-described premises to allow seizure of the following items:

IN THE CIRCUIT COURT OF THE
SIXTH JUDICIAL CIRCUIT, IN
AND FOR PASCO COUNTY,
FLORIDA.

STATE OF FLORIDA,
    PLAINTIFF,

VS.
James Edward Howze, Jr. and/or
Jason Wayne Meyer

aka
"Fast Eddy" and "Jason".

APPLICATION AND AFFIDAVIT FOR
SEARCH WARRANT

BEFORE ME, the undersigned Judge, State of Florida, personally came Detective Michael S. Mielke, a law enforcement officer employed by the Pasco County Sheriff's Office, who by me being first duly Sworn, deposes and says that they have reason to believe the laws of the State of Florida have been violated and are now being violated and there is now being kept in or on the below-described premises and/or the curtilage of the same certain fruits or instrumentalities of that crime to be found in or on the following described premises located in Pasco County, Florida:

    The premise to be searched is a green colored, out-building shed and forest area located at 39011 County Line Road in the area of Crystal Springs, Pasco County, Florida. The structure is constructed primarily of aluminum and wood and painted green in color. To the rear of the single wide mobile home residence and the out-building is a wooded area with a two rut road traveling north to a small clearing in the approximate center of the wooded area.

    To reach the shed and forest to be searched located at 39011 County Line Road in the area of Crystal Springs, Pasco County, Florida, begin at the intersection of US Highway 301 (Gall Boulevard) and Chancy Road (CR 535) in Zephyrhills, Florida. From this intersection travel east approximately 0.6 (six tenths) of a mile to Paul Buchman Highway (SR 39). At this intersection turn right (south) onto SR 39 and proceed 2.7 (two and seven tenths) miles to County Line Road. Turn right (west) onto County Line road and proceed approximately 0.9 (nine tenths) of a mile west to the residence. The trailer, shed, and forest are located on the north side of the roadway and has a chain link fence along the front of the residence.

The subject premises are believed to be occupied and/or under the actual control of James Edward Howze, Jr. Aka "Fast Eddie" and Jason Wayne Meyer.

AND YOUR AFFIANT has probable cause to believe that the following described items are upon said premises:

1. Illegal Narcotics, to wit: methamphetamine and pre-cursor chemicals used in the manufacture of methamphetamine, including but not limited to iodine, ephedrine, psuedoephedrine, anhydrous ammonia, cooking fuel, acetone, and other solvents, acids, and bases, as described in the attached Search Warrant.
2. Narcotics Paraphernalia, including but not limited to: weight scales, syringes, packaging equipment, cutting agents used for illegal narcotics trafficking.
3. Written records of illegal narcotics sales and/or delivery.
4. Written records of names, addresses, telephone numbers and/or photographs, and/or other information regarding buyers and sellers of narcotics, including but not limited to: digitally recorded numbers on caller identification units and pagers.
5. United States Currency related to narcotics sale and/ distribution.

SEARCH WARRANT
Page 02 of 02

AND YOUR AFFIANT'S have probable cause to believe that the following described items are upon said premises:

1. Illegal Narcotics, to wit: methamphetamine and pre-cursor chemicals used in the manufacture of methamphetamine, including but not limited to iodine, ephedrine, psuedoephedrine, anhydrous ammonia, cooking fuel, acetone, and other solvents, acids, and bases as described in the attached search warrant.
2. Narcotics Paraphernalia, including but not limited to: weight scales, syringes, packaging equipment, cutting agents used for illegal narcotics trafficking.
3. Written records of illegal narcotics sales and/or delivery.
4. Written records of names, addresses, telephone numbers and/or photographs, and/or other information regarding buyers and sellers of narcotics, including but not limited to: digitally recorded numbers on caller identification units and pagers.
5. United States Currency related to narcotics sale and/ distribution.

ALL OF WHICH is being kept and/or was used and/or obtained in violation of the laws of the State of Florida, to-wit: Florida Statute 893.13, Possession and/or Manufacture of Methamphetamine Statute 893.147, Possession of Drug Paraphernalia.

NOW THEREFORE, you or either of you, with such lawful assistance as may be necessary, are hereby commanded, in the daytime or in the nighttime, or on Sunday or as the exigencies of the occasion may demand to enter the said premises and the curtilage thereof, and then and there to search diligently for said property described in this warrant, and if the same or any part thereof be found on said premises, you are hereby authorized to seize and secure the same and to make return of your doings under this warrant to the undersigned within ten days from the date hereof, and you are likewise commanded in the event you seize or take property or materials mentioned in the warrant to safely keep the same until otherwise ordered by a court having jurisdiction thereof, and that you give proper receipt for said property and deliver a copy of this warrant to the person from whom taken or those in whose possession it is found or in the absence of any such person to leave said copy in the place where said property or material is found, and you are further directed to bring said property so found and any person arrested in connection therewith before the court having jurisdiction of this offense to be disposed of according to law. You or either of you, with such lawful assistance as may be necessary, are also authorized and commanded to search those vehicles which you may encounter on the premises or curtilage thereof, pursuant to the execution of this warrant.

WITNESS MY HAND and official seal on this 12th day of August 2002.

_Stanley R. Mills_
Circuit Court Judge
Sixth Judicial Circuit of Florida in and for Pasco County

A TRUE COPY
_Stanley R Mills_

APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT
Page 02 of 04

ALL OF WHICH is being kept and/or was used and/or obtained in violation of the laws of the State of Florida, to-wit: Florida Statute 893.13, Possession and/or Manufacture of Methamphetamine and Florida Statute 893.147, Possession of Drug Paraphernalia.

THE BASIS FOR YOUR AFFIANT'S BELIEF IS AS FOLLOWS:

Your Affiant, Detective Michael S. Mielke, (hereinafter referred to as "YA") is a duly sworn law enforcement officer employed by the Pasco County Sheriff's Office since March 2001. Prior to this, YA served the Gainesville Florida Police Department as a law enforcement officer for approximately 15 years. During my tenure, YA served in various bureaus within the Gainesville Police Department as a Uniform Patrol Officer, Community Oriented Police Team member, and a Narcotics Detective. YA was responsible for making numerous drug cases that were successfully prosecuted by the State of Florida or the U.S. Government in Federal Court. YA has successfully investigated street and mid level narcotics organizations/individuals. YA has received training in the identification and investigations of street gangs, highway interdiction, reconnaissance operations and electronic surveillance. YA has been trained as an Evidence Technician. YA has had training and experience in the detection, identification, packaging, record keeping, and methods of distribution and investigation of illegal narcotics and related violations of Chapter 893, Florida Statutes. YA completed the U.S. Drug Enforcement Administration's Basic Narcotic and Dangerous Drug Law Enforcement School. By his training and experience, YA is familiar with the controlled substance Methamphetamine and manufacture of same, it's illicit usage and many of the techniques and methods employed by purveyors of methamphetamine, cocaine and cannabis as well as other illegal narcotics. It is YA's experience that purveyors of illegal narcotics often keep written and electronic records, including but not limited to: ledgers, names, addresses, telephone numbers, photographs, and other information relating to narcotics transactions. It is also YA's experience that the purveyors of illegal narcotic transactions often have sums of currency on the premises that are the direct proceeds from said transactions.

During the month of May, 2002, the Pasco County Sheriff's Office Vice and Narcotics Unit initiated an active investigation as to alleged illegal methamphetamine manufacture and sales occurring within the property located 39011 County Line Road, Crystal Springs, Florida. Numerous anonymous complaints from residents in the Crystal Springs area were reported to Pasco Sheriff's Office Narcotics Unit that James "Fast Eddy" Howze, Jr. and Jason Meyer were selling and manufacturing methamphetamine from their residence, out-building and within the open portion of the northern wooded area contained within the same property.

During the Month(s) of May, June, and July 2002, Confidential Informant(s) #1, #2, #3 and #4 provided members of the Pasco County Sheriff's Office Narcotics Unit with updated and independently verified information as to the method(s), frequency, quantity and duration of the manufacture and sale of methamphetamine by James Howze, Jr., and Jason Meyer at the 39011 County Line Road property. Description of the activities included, but where not limited to: identification of participants, location and methods used to obtain ephedrine, psuedoephedrine, various chemical(s), odor emitted from the manufacturing process, and method(s) used to conceal and dispose of the remnant materials from the manufacturing process.

On June 28th*, 2002, at approximately 1700 hours, the Pasco Sheriff's Office Narcotics Unit conducted a controlled narcotics purchase at the Howze residence located 39011 County Line Road Crystal Springs, Florida. The purpose of the controlled buy was to purchase methamphetamine from James Edward Howze, Jr. or other person(s) known to sell same. PCSO Detective Chris Starnes and a documented reliable CI#2 conducted the primary undercover functions during this investigation. CI#2 was issued sixty dollars of prerecorded serialized US currency for the transaction. CI#2 was equipped with an electronic surveillance device which allowed other Detectives to monitor and record the activities of CI#2 and Detective Starnes. CI#2 and the undercover vehicle were searched for illegal drugs and weapons immediately prior to and after the transaction. None were discovered. At approximately 1752 hours, this date, Detective Starnes and CI#2 approached the residence. Once on scene, CI#2 made contact with James Howze, Jr. Howze was unwilling to sell methamphetamine to CI#2 due to the imminent ongoing manufacture of methamphetamine at this location. CI#2 smelled and observed activities consistent with the

APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT
Page 04 of 04

1. Illegal Narcotics, to wit: methamphetamine and pre-cursor chemicals used in the manufacture of methamphetamine, including but not limited to iodine, ephedrine, psuedoephedrine, anhydrous ammonia, cooking fuel, acetone, and other solvents, acids, and bases, as described in the attached Search Warrant.
2. Narcotics Paraphernalia, including but not limited to: weight scales, syringes, packaging equipment, cutting agents used for illegal narcotics trafficking.
3. Written records of illegal narcotics sales and/or delivery.
4. Written records of names, addresses, telephone numbers and/or photographs, and/or other information regarding buyers and sellers of narcotics, including but not limited to: digitally recorded numbers on caller identification units and pagers.
5. United States Currency related to narcotics sale and/ distribution.

ALL OF WHICH WHEREFORE, YA prays that a search warrant be issued according to law, commanding the Sheriff and/or his duly constituted Deputy Sheriffs of Pasco County, Florida, and/or Investigators and/or Law Enforcement Officers of the Florida Department of Law Enforcement, and/or Special Agents of the United States Drug Enforcement Administration, and/or any of their duly constituted Agents, with necessary and proper assistance, to search the above-described premises for the above-described items, and for the seizure and safekeeping thereof, either in the daytime or nighttime, or on Sunday, as the exigencies of the occasion may demand, in order that the evidence may be procured to be used in the prosecution of such person or persons unlawfully possessing or using the same in violation of the laws of the State of Florida.

_____
Detective Michael S. Mielke (YA)

Sworn and Subscribed before me this 12th day of August, 2002

_____
Stanley R. Mills
Circuit Court Judge

THE ABOVE APPLICATION for search warrant coming on to be heard and having examined the Applicant under oath and the above Sworn affidavit set forth and thereupon being satisfied that there is probable cause to believe that the grounds set forth in said Affidavit and Application for Search Warrant do exist and that the law is being violated, I so find, and a search warrant is hereby allowed and issued.

_____
Stanley R. Mills
Circuit Court Judge

A True Copy
Stanley R. Mills

# SEARCH WARRANT RETURN

Received this warrant on the 12th day of August, 2002 and executed same on this 12th day of August, 2002 by reading the warrant to the curtilage at 39011 County Line Road, Crystal Springs, Florida and delivering a true copy to the curtilage at 39011 County Line Road, Crystal Springs, Florida and searching herein described premises and upon completion of such search, I delivered to the curtilage that was the subject of the warrant and the Clerk of the Court a written inventory of the property taken and set forth same specifying such property in detail. A true and correct list set forth in the following inventory:

<u>See Attached</u>
INVENTORY

## STATE OF FLORIDA
## COUNTY OF PASCO

I, Detective Michael S. Mielke, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me and said warrant.

_____
Affiant

The foregoing instrument was acknowledged Before me this ___<sup>th</sup> day of August, 2002, by Det. Michael S. Mielke who is personally known To me ~~or has produced~~ _____ ~~as~~ ~~Identification and~~ who did take an oath.

_____
Notary Public

My commission expires_____

Phyllis Von Allen
MY COMMISSION # DD047528 EXPIRES
September 2, 2005
BONDED THRU TROY FAIN INSURANCE, INC.
Print/Type Name

EXHIBIT  C

```
IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF FLORIDA
        CASE No. 8:03cr226 T 17MSS


UNITED STATES OF AMERICA

         Plaintiff,
v.                          MARCH 9, 2004
                            10:00 AM.
Demetrius McLaughlin

         Defendant.
_____/


         TRANSCRIPT OF TRIAL PROCEEDINGS
    BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
    UNITED STATES DISTRICT COURT JUDGE, and a jury

APPEARANCES:

For the Government:   PAMELA COTHRAN
                      Assistant U.S. Attorney
                      U.S. Attorney's Office
                      400 North Tampa St.,
                      Ste.3200
                      Tampa, FL 33602

For the Defendant:    GRADY IRVIN
                      PO Box 146
                      Saint Petersburg, FL 33731

Reported By:          Sandra K. Lee, RPR
                      Official Court Reporter
                      U.S. District Court
                      801 North Florida Avenue
                      Tampa, FL 33602
                      (813) 301-5699

STENOGRAPHICALLY RECORDED
COMPUTER-AIDED TRANSCRIPTION
```

2

Index

WITNESS: MICHAEL MIELKE

Direct examination by Ms. Cochran    33
Cross-examination by Mr. Irvin       41

WITNESS: PAUL THOMPSON

Direct examination by Ms. Cochran    50
Cross-examination by Mr. Irvin       94
Redirect examination by Ms. Cochran  123
Recross examination by Mr. Irvin     127

WITNESS: PETER ECHEVARRIA

Direct examination by Ms. Cochran    130
Cross-examination by Mr. Irvin       152
Redirect examination by Ms. Cochran  165

WITNESS: CLINTON CABBAGE

Direct examination by Ms. Cochran    172
Cross-examination by Mr. Irvin       181
Redirect examination by Ms. Cochran  201
Recross examination by Mr. Irvin     202
Continued Redirect examination
    By Ms. Cochran                   206

3

PROCEEDING

THE COURT: I appreciate your patience. I came here as fast as I could. I had two doctors' appointments this morning. I'll share it with the jury, one of the appointments, when they come in.

Any matter to come before the Court before we get started?

MS. COTHRAN: Yes, Your Honor. This morning I was shown a letter that purports to be written by a co-defendant exculpating this defendant. I'd like to do an oral motion in limine to make sure that there's no statements made about that in opening statement as it would be hearsay.

MR. IRVIN: Stipulate.

MS. COTHRAN: I don't intend to --

THE COURT: Stipulated. Stipulated. Okay. And if you're going to make an opening, I'll go through the standard conversation where you don't have to do anything, if you wish to make an opening you could do it now or reserve it, et cetera. Okay? And we'll deal with this problem during a break. Okay?

MS. COTHRAN: Okay. Sounds good.

4

MR. IRVIN: Let me just hand it to my client this morning. He's in jail in custody.

THE COURT: Okay. We got any other assistants here for that problem?

MS. COTHRAN: They're just here for the show.

THE COURT: They're here for what?

MS. COTHRAN: For the show.

THE COURT: Well, we'll going to charge admission, if that's the situation. Okay. Are we ready to go? Are you ready?

MR. IRVIN: Can we wait for the jury to come in to invoke the rule?

THE COURT: Yes. That would be better. You ready, Mr. Bailiff? Let's get them.

(JURY IN THE COURTROOM.)

THE COURT: Ms. Cothran and Mr. Irvin, we're going to go two hours and then we're going to take our lunch for an hour.

All rise for the jury. Good morning, ladies and gentlemen of the jury.

My standard inquiry, since yesterday when you came up here for your voir dire examination, up to the present time, and that's the preface predicate for any inquiry I make of

**Page 53**

1  subpoena. You may leave or go and you may sit in
2  the courtroom since you're not going to be subject
3  to recall. Okay? Watch your step going down,
   sir.
4         Call your next witness, Miss Cothran.
6         MS. COTHRAN: The government would call
7  Paul Thompson.
8         THE COURT: While you're doing that, I'm
9  going to stand up. If you all want to stand up
10 for a second, you can. Oh, that didn't take much
11 of an invitation, did it?
12        You can stand, Mr. Irvin, if you want
13 to.
14        MR. IRVIN: What's the name of this
15 doctor, Judge?
16        THE COURT: All right, Mr. Irvin. We'll
17 discuss it later. Okay. All right.
18        Are we ready for the witness? Is the
19 witness coming in?
20        THE CLERK: Please come forward to be
21 sworn, sir.
22        THE COURT: Please come forward, sir.
23 We're just taking a little stand up while this is
24 going on. Okay?
25        COURTROOM DEPUTY: Please raise your

**Page 54**

1  right hand. Do you solemnly swear the testimony
2  you shall give in this cause will be th truth, the
3  whole truth, and nothing but the truth?
4         THE WITNESS: I do.
5         THE COURT: All right, sir -- ladies and
6  gentlemen, you may be seated -- take a seat there
7  in the witness box, sir. Watch your step. Sit
8  back in the chair, pull it forward. And when
9  you're seated comfortably, please state your name
10 for the record.
11        THE WITNESS: Paul William Thompson.
12        THE COURT: And please spell your last
13 name.
14        THE WITNESS: T-H-O-M-P-S-O-N.
15        THE COURT: Please keep speaking up
16 loudly and clearly, sir. And whatever lawyer is
17 at the podium, let that lawyer complete the
18 question before you commence the answer because
19 the lady who's the court reporter can't take two
20 people talking at the same time.
21        You may proceed, Miss Cothran.
              **DIRECT EXAMINATION**
23 BY MS. COTHRAN:
24 Q.  Good morning, Detective Thompson.
25 A.  **Good morning.**

**Page 55**

1  Q.  Could you please tell the jury how you're
2  employed?
3  A.  **I'm a detective with the Pasco County**
4  **Sheriff's Office currently assigned to the DEA**
5  **task force.**
6  Q.  Could you explain what a task force does,
7  how it's associated with DEA?
8  A.  **It consists of actually DEA special agents**
9  **and local law enforcement officers from the area**
10 **to investigate basically drug crimes. This task**
11 **force specifically is methamphetamine.**
12 Q.  Is part of your role with the DEA
13 methamphetamine task force to act as sort of a
14 liaison with local law enforcement?
15 A.  **Yes.**
16 Q.  But your actual employment is with the Pasco
17 County Sheriff's Office, is it not?
18 A.  **Yes.**
19 Q.  How long have you been with the Pasco County
20 Sheriff's Office?
21 A.  **Nine years.**
22 Q.  And how long have you been assigned to the
23 DEA task force?
24 A.  **For one year now.**
25 Q.  What other divisions have you been assigned

**Page 56**

1  to -- well, let me ask you first: With Pasco
2  County Sheriff's Office, what unit are you
3  assigned to?
4  A.  **I'm assigned to the narcotics section.**
5  Q.  What other divisions have you been assigned
6  to other than the narcotics unit?
7  A.  **I was in the patrol division and the**
8  **community policing team.**
9  Q.  Were you involved in an investigation of
10 possible methamphetamine sales and manufacturing
11 in approximately July 2002?
12 A.  **Yes, I was.**
13 Q.  How did your investigation begin?
14 A.  **I received information from a confidential**
15 **informant who told me about a residence in**
16 **northern Pasco or possibly southern Hernando**
17 **County which was involved in methamphetamine**
18 **sales.**
19 Q.  Had you previously found the information
20 provided by this confidential informant to be
21 corroborating or had you been able to corroborate
22 information provided by this informant?
23 A.  **Yes.**
24 Q.  Based on information provided about this
25 property, what did you do on July 16, 2002?

EXHIBIT D

**81**

THE COURT: Yes. Supposed to be. As far as I know, unless he's running right through with you people.

MR. IRVIN: Okay, Judge.

(RECESS IN PROCEEDING.)

MS. COTHRAN: Buddy Gissendanner is in the courtroom, and I think we should discuss what we are going to do with the witness, James Edward Howze.

THE COURT: Let's go to sidebar. Miss Cochran, Mr. Irvin. You there, Sandi? Ready?

COURT REPORTER: Ready, Judge.

(AT WHICH TIME THE FOLLOWING SIDEBAR DISCUSSION WAS HELD.)

THE COURT: I know that you are the attorney for Mr. Howze, is it?

MR. GISSENDANNER: Howze.

THE COURT: And you're also in front of Judge Moody right now.

MR. GISSENDANNER: Correct.

THE COURT: And Judge Moody is expecting you in about 10 minutes.

MR. GISSENDANNER: Correct

THE COURT: Here's the situation. Have you had a chance to talk to your client?

**82**

MR. GISSENDANNER: No.

THE COURT: Not at all? I think what we need to do is to advise your client that you are available if I has any questions with regard to his testifying in this case. If he needs to confer with you, and I would ask Judge Moody if it would be possible for you to be able to on a recess confer with him. We are here until 6 o'clock today. I don't think Judge Moody is going to be in session longer than whatever, today. But we can accommodate you to some extent and try to do some other things.

But we are going to finish this case today.

MR. GISSENDANNER: That's fine, Judge. I think you can ask him that but I would have to insist on talking to him beforehand because it has pretty good implications on his plea agreement and sentencing.

THE COURT: Sure.

MR. GISSENDANNER: That he needs to know about.

THE COURT: Well, he's in the holding cell -- no, he hasn't arrived yet. When he arrives, you will be notified and let's see if you

**83**

can take a recess over in Judge Moody's trial to try to accommodate. When he arrives, we'll send somebody over to find out what's going on.

MR. GISSENDANNER: Okay. Great.

THE COURT: Fine.

MR. GISSENDANNER: Thank you.

THE COURT: Thank you.

(END OF SIDEBAR.)

THE COURT: All right. Are we ready to go.

MS. COTHRAN: Yes, ma'am.

THE COURT: All right. All rise for the jury.

(Jury in the courtroom.)

THE COURT: You may be seated, ladies and gentlemen of the jury. You may be seated in the courtroom. My standard inquiry, you haven't discussed the case among yourselves, with anyone else, nor permitted it to be discussed in your presence, et cetera? Correct, everybody?

JURY MEMBERS: Right.

THE COURT: I hope that the judges didn't disturb you all in your jury room. However, we did hear the jury during the time that we were having our meeting. Although there

**84**

wouldn't be anybody that would admit to laughing loudly over some things.

All right. We are ready to proceed forward, ladies and gentlemen of the jury.

If you are ready, Miss Cothran, call your next witness or make your next presentation of evidence in your Government's case in chief.

MS. COTHRAN: The Government recalls Paul Thompson.

THE COURT: All right.

All right, sir. You are still under the same oath. You will resume the stand. State your name -- well, excuse me. Get you seated. State your name again for the record.

THE WITNESS: Paul William Thompson.

THE COURT: Spell your last name.

→ THE WITNESS: T-H-O-M-P-S-O-N.

THE COURT: Fine. Keep speaking up loudly and clearly as you are.

You may proceed, Miss Cothran.

MS. COTHRAN: Thank you, Judge.

DIRECT EXAMINATION

BY MS. COTHRAN:

Q. Good afternoon, Agent Thompson.

A. **Good afternoon.**

125

THE COURT: I know but he is entitled to talk to his lawyer, and his lawyer is entitled to talk to him.

MR. IRVIN: What I'm saying is if you want to decide you want to let the jury go home, the reason I say that we'd be done very quickly in the morning because you're not going to instruct them till tomorrow any way, right?

THE COURT: That's correct. You're not going to sum up until tomorrow.

MR. IRVIN: He is probably a ten-minute witness for both of us, accumulative.

THE COURT: That's assuming your client does not testify.

MR. IRVIN: What I will not do if I tell you today he is not testifying, I will not come tomorrow and tell you he is testifying.

THE COURT: You don't really have that control.

MR. IRVIN: I know --

THE COURT: The second thing I want to say is I want to give you the opportunity on the record out of her presence at sidebar -- I have done this in the past -- to be able to put on the record ex parte but on the record that you have

126

advised your client whichever way you have advised your client and your client's preference is whatever way your client's preference is.

MR. IRVIN: He said it's up to me. Let me put this way: He's listening to my advice.

THE COURT: What I'm saying to you if you want to put it on the record at sidebar ex parte, just you and him, we can do that so that the record is clear. And you don't come back later on with a problem.

MR. IRVIN: I understand.

THE COURT: Now, let us -- oh, let's see now. What do we got now? Is our man here? The Marshals -- talk about timing.

MARSHAL: I just asked. They said it's probably about another hour.

THE COURT: Another hour before he arrives.

MARSHAL: And I'm going to leave him down there so he can talk to the attorney on the 1 Floor.

THE COURT: All right. Okay. All right. Okay. Thank you. Because I think I'd rather finish this today even though we put the jury out for a recess. They're having a good time

127

1  in the jury room. I mean, I mean I heard them.
2  They were having a good time. Probably for some
3  of these people it's enjoyable. They seem to be
4  laughing. We could hear them in the north
5  conference room. Okay.
6          Let's go forward and let's finish up
7  this witness and then let's put --
8          MR. IRVIN: And all the other stuff to
9  do, right?
10         THE COURT: There's stuff for them to do
11 there. Let's just try and get this done today. I
12 think we're better off doing that because we'll
13 work on the jury instructions.
14         (END OF SIDEBAR).
15         THE COURT: You may proceed consistent
16 with sidebar, Miss Cothran
17         MS. COTHRAN: Thank you, Your Honor.
18 BY MS. COTHRAN:
19 Q.   If I'm not mistaken, I believe my question
20 was, I just asked you if you were present for a
21 search at James Howze or Fast Eddie's residence in
22 August of 2002. I think you told me that you
23 were?
24 A.   **Yes, that's correct.**
25 Q.   Do you know whether or not any anhydrous

128

1  ammonia tanks were recovered at Fast Eddie's
2  residence?
3  A.   **Yes. Tanks were recovered.**
4  Q.   Thank you. Well, were any of them green?
5  A.   **Yes.**
6          MS. COTHRAN: That's all I have, Your
7  Honor.
8          THE COURT: All right. Recross?
9          MR. IRVIN: Nothing, Your Honor.
10         THE COURT: I think you will still want
11 him on standby for any rebuttal; correct?
12         MS. COTHRAN: Yes, Your Honor.
13         THE COURT: All right. Fine.
14         Sir, you are still on standby status,
15 still under your subpoena. You may leave the
16 courtroom at this time and remain outside, at
17 least temporarily. Thank you.
18         All right. Consistent with the sidebar,
19 I'm going to tell the ladies and gentlemen of the
20 jury that we are awaiting the arrival of a
21 witness. And the fact that this witness is not
22 here is not the fault of any of the attorneys in
23 this case.
24         Miss Cothran, I don't know whether you
25 want to make any announcement at this time or you