# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEMETRUIS MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  06-2048 (RMC) |
| | ) | |
| DEPARTMENT OF JUSTICE DRUG | ) | |
| ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant . | ) | |
| _____ | ) | |

### DEFENDANT'S ERRATA FILING
### CORRECTED DECLARATIONOF LEILA I. WASSOM

Defendant, through undersigned counsel, respectfully files this Errata to the

Declaration of Leila I. Wassom, which was filed as an Exhibit to Defendant's Motion for

Summary Judgement filed on March 7, 2007 (Dkt # 10).  The original declaration

contained errors as to the dates that DEA searched for responsive records.  A corrected

Declaration was executed immediately after the error was caught on March 8, 2007.

However, it has come to the attention of the undersigned that due to an oversight, the

corrected declaration was never substituted.  Accordingly, defendant is filing this errata to

remedy that oversight.  Undersigned counsel apologizes for any inconvenience or

confusion caused by the delay in correcting the error.

Respectfully submitted,

/s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/

MADELYN E. JOHNSON, DC Bar #292318
Assistant United States Attorney
U.S. Attorney's Office, Rm  E4114
555 4th Street, N.W.
Washington, D.C.  20530
*(202) 514-7135*

CERTIFICATE OF SERVICE

I CERTIFY that on October 4, 2007, plaintiff was served with a copy of the

foregoing Motion for Enlargement of Time via first-class mail postage prepaid and

addressed:


Demetrius McClaughlin
#41297-018
FCC Coleman-USP
P.O. Box 1033
Coleman, FL   33521-1033


_____/s/_____
        Madelyn E. Johnson
        Assistant U.S. Attorney
        555 4th Street, N.W., Rm. E4114
        Washington, D. C.  20530
        (202) 514-7135

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMETRIOUS MCLAUGHLIN,         )
                                 )
                 Plaintiff,          )
                                 )
         v.                        )
                                 )   **Civil Action No.**
DRUG ENFORCEMENT ADMINISTRATION, )
                                 )
             Defendant.      )
_____ )

## DECLARATION OF LEILA I. WASSOM

1.   I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to

the Office of Chief Counsel, Administrative Law Section (CCA),  DEA Headquarters,

Washington, D.C.  From August 1991 to June 2005,  I was assigned to the Freedom of

Information and Records Management Section,  DEA Headquarters.

2.  I review for litigation purposes both the initially processed and appealed Freedom of

Information Act (FOIA) and Privacy Act (PA) requests received by DEA.   I have performed

these duties at DEA since 1991.

3.  My duties require that I am familiar with the policies and practices of DEA regarding the

processing and release of information requested under the FOIA/PA, and the application of the

FOIA/PA and exemptions for which I have received formal and on the job training.

1

4. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5. SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

6. By letter dated September 15, 2006, the plaintiff requested copies of any and all documents, records, policy and information that were used in connection with the investigation conducted by DEA and the Pasco County, Florida Sheriff's Office of the illegal manufacture of methamphetamine in Pasco County approximately during the period May 2002 through March 2004. The plaintiff specifically requested information connected to surveillance and equipment used for surveillance, and information about a traffic stop of himself conducted by the Pasco County Sheriff's Office on July 16, 2002, including copies of notes, logs, and reports. The plaintiff also requested information on the collecting of evidence regarding his criminal case, providing his criminal case number. The plaintiff promised to pay reasonable search and duplication costs, requesting that he be informed if the estimated costs exceeded $250.00. A copy of the plaintiff's letter dated September 15, 2006, is attached as Exhibit A.

2

7.  By letter dated February 26, 2007, DEA released portions of 18 pages and two pages in their

entirety to the plaintiff.  Thirteen pages were withheld in their entirety.  Information was withheld

pursuant to FOIA exemptions pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and

(b)(7)(F), and Privacy Act exemption (j)(2).  The plaintiff was informed that (1) in response to

his request for records from criminal case #8:03-CR-226-T-17MSS, DEA does not index records

by criminal case number, and (2) that in response to his request for records from the Pasco

County, Florida, sheriff's office, DEA the FOIA requires that DEA search and process records

under this agency's control and custody, and is not required to obtain records from another

agency.  A copy of the DEA letter dated February 26, 2007, is attached as Exhibit B.


8.  By letter dated February 27, 2007, pursuant to a litigation review, DEA made a supplemental

release of portions of two pages to the plaintiff.  Information was withheld pursuant to FOIA

exemptions (b)(2), (b)(7)(C), and (b)(7)(F).  A copy of the DEA letter dated February 27, 2007, is

attached as Exhibit C.


## ADEQUACY OF SEARCH


9. The plaintiff's letter was interpreted as a request for criminal investigative records held by

DEA that referenced or related to the plaintiff, or were referenced by the plaintiff's name. .

Criminal investigative records about the plaintiff and held by DEA were reasonably likely to be

found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.


3

10. IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.

11. No other system of records maintained by DEA would reasonably likely contain the information requested by the plaintiff.

12. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

13. On December 15, 2006, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated September 15, 2006. The search was conducted by a SARO Freedom of Information Specialist, who used the plaintiff's name, Social Security Number, and date of birth.

14. As a result of the NADDIS query, 35 pages of responsive materials were located. DEA released portions of 18 pages and two pages in their entirety to the plaintiff and 13 pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2). A *Vaughn* index detailing DEA's withholdings has been prepared, and it is attached as Exhibit C.

4

## DESCRIPTION OF RESPONSIVE MATERIAL

15.  The responsive material consisted of:

   (a). 12 DEA ROIs;

   (b). one (1) DEA Personal History Report;

   (c). one (1) DEA Defendant Disposition Report;

   (d). two (2) DEA Acquisition of Non-Drug Property and Regulatory Seizures;

   (e). three (3) Report of Drug Property Collected, Purchased or Seized;

   (f). one (1) page containing copies of photographs; and

   (g). one (1) Federal Bureau of Investigation (FBI) fingerprint card

16.  The investigative information responsive to plaintiff's request is criminal investigatory data compiled for law enforcement purposes.  The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.

17.  DEA investigative case files are established by the office commencing an investigation.  The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened.  DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

18.  Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file.  This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

19.  Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition Report, and other documents that may serve as a substitute for the forms.

## APPLICATION OF EXEMPTIONS

### Privacy Act Exemption (j)(2)

20.  DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*.  See 28 C.F.R. § 0.100.

21.  IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access. 28 C.F.R. §16.98(c)(3).

6

22.  In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information.  Thus, the release of information is only that which is required by the FOIA.

## FOIA Exemption (b)(2) - Internal Personnel Practices and Procedures.

23.  The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.

24.  Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, most of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers.  The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b) NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2006). Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator. Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third- party NADDIS numbers.

(c) Confidential source identifier codes are assigned to DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions. Knowledge of identifier codes can assist in identifying the informant and provide sensitive information about individuals who cooperate with DEA in carrying out its law enforcement functions. Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identifier codes.

25. The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension create alibis for

suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.

26. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public interest in the release of these codes.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### Exemption (b)(7) Threshold

27. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

28. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.

## FOIA Exemption (b)(7)(C) - Invasion of Privacy

29.  The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Many of the documents in the investigative case file contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff.  The individuals, which include third-parties, suspects, criminal associates, non-implicated individuals, and law enforcement officers and support personnel, are protected from the disclosure of their identities.

30.  In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities.  In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals.  Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

31.  In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue.  The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act,

10

and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

32. The identities of DEA Special Agents, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

33. The Special Agents and other law enforcement officers were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents.

34. The identities of government employees, including DEA Special Agents, state/local law enforcement officers, and a DEA non-drug evidence custodian were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position

11

that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

## FOIA Exemption (b)(7)(D - Confidential Sources and Information Obtained from Confidential Sources

35.  The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source

36.  Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of Exemption (b)(7)(D) to determine whether confidentiality was expressed or implied.

37.  As an agency charged with law enforcement authority, DEA relied on Exemption (b)(7)(D) to protect source-identifying and source-suppled investigative information.  The information at issue here pertains to coded confidential informants with express assurances of confidentiality and sources of information where implied confidentiality applies.  Because of the nature of DEA'S criminal investigations, any information that could identify these informants including the informant identifier codes could subject them to serious harm, substantial repercussions, and possibly even death.

## Express Confidentiality - Coded Informants

12

38. Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. They are assigned an identification code which is used in place of their name or referred to as CI.

## Sources with Implied Confidentiality

39. When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.

40. The plaintiff was convicted of conspiracy to manufacture methamphetamine and possession of pseudoephedrine. It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as methamphetamine, if their identities or the information they provided was revealed. Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.

41.  Pages "13" through "17" comprise a 5 page ROI containing the debriefing of a coded

informant, who provided information about the drug trafficking and other criminal activities of

third parties and the plaintiff.  Information about the plaintiff is found in one sentence on page

"15", and in the Indexing Section on page "17".  The information about the plaintiff on page

"15" is inextricably intertwined with information about third-parties and/or would disclose the

identity of and information provided by a coded informant.   The pages are withheld in their

entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after

redacting all withholdable information only incomprehensible words and phrases would remain

and no useful information about how the government conducts business.


42.  Pages "18" through "20" comprise a three page ROI containing the initial debriefing of a

coded informant, who provided information about his/her interaction with the plaintiff, and the

drug trafficking activities of the plaintiff and third parties.  Information about the plaintiff is

found throughout page "18", and his name is mentioned in the Indexing Section on page "20".

The plaintiff's name is not mentioned on page "19".   The information about the plaintiff on page

"18" is inextricably intertwined with information about third-parties and/or would disclose the

identity of and information provided by a coded informant.  The pages are withheld in their

entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), since after

redacting all withholdable information only incomprehensible words and phrases would remain

and no useful information about how the government conducts business.

14

43.  Page "25" is a one page ROI containing an interview of a named confidential source, who

provided information about his/her drug-related interaction with the plaintiff and third parties.

The information about the plaintiff on the page is inextricably intertwined with information about

third-parties and/or would disclose the identity of and information provided by a confidential

source.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C),

(b)(7)(D), and (b)(7)(F), since after redacting all withholdable information only

incomprehensible words and phrases would remain and no useful information about how the

government conducts business.


**FOIA Exemption (b)(7)(F) -Safety of Law Enforcement Personnel and Other Individuals**

44.  The names of  DEA Special Agents, Supervisory Special Agents, and Pasco County, Florida

law enforcement officers were withheld in accordance with 5 U.S.C. § 552 (b)(7)(F).  Exemption

(b)(7)(F) sets forth an exemption for records or information compiled for law enforcement

purposes the disclosure of which could reasonably be expected to endanger the life or physical

safety of an individual.


45.  DEA Special Agents and Supervisory Special Agents, as well as members of other law

enforcement entities, are frequently called upon to conduct a wide variety of investigations,

including sensitive and dangerous undercover operations.

46. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

47. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C).

## SEGREGABILITY

48. All of the responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety only where,

16

based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

49. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

50. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods

17

in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

51. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

52. Pages "1", "2" and "3" comprise the Personal History Report of a third party. The plaintiff's name is mentioned only as a criminal associate on page "1." The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). After redacting all withholdable information, only the plaintiff's name would remain and no useful information regarding how the government conducts business.

53. Page "24" is the second page of a two page ROI describing the indictment and arrest of the plaintiff and his co-defendants. The plaintiff's name is mentioned only in the Indexing Section. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F),

18

since after redacting all withholdable information no useful information about how the government conducts business would remain.

54.   Page "31" is the second page of a five page ROI describing the seizure of a methamphetamine lab.   The page contains only the latter portion of the Indexing Section.  The plaintiff's name is not mentioned on the page.  The page is withheld in its entirety pursuant to FOIA exemptions (b)(2) and (b)(7)(C), since after redacting all withholdable information only incomprehensible words and phrases would remain and no useful information about how the government conducts business remains.

55.  The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct.

3-8-07
DATE

Leila I. Wassom
Paralegal Specialist
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C.  20537