## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMETRIUS MCLAUGHLIN,     )
          )
     Plaintiff,     )
          )
     v.     )     Civil Action No. 06-2048 (RMC)
          )
DEPARTMENT OF JUSTICE DRUG     )
ENFORCEMENT ADMINISTRATION,     )
          )
     Defendant .     )
_____     )

### DEFENDANT'S NOTICE OF FILING[1]

Defendant the Drug Enforcement Administration (DEA), through undersigned

counsel, respectfully submits this Notice of Filing of the Declaration of William C. Little,

Jr., filed pursuant to the Court's Order entered January 17, 2008. The Declaration

addresses the referral of 270 pages of material, one CD-R, and one audio cassette tape

from the Executive Office for United States Attorneys to the Drug Enforcement

Administration.

     Respectfully submitted,
     /s/
     JEFFREY A. TAYLOR, D.C. BAR # 498610
     United States Attorney

---

[1]By way of an errata, defendant notes a non-substantive correction to the civil action number of Mr. Little's declaration, which should read "06-2048" rather than "06-00960". Nevertheless, the caption and, more importantly, the content of the declaration clearly pertain to this case and describe in detail the processing and response to plaintiff regarding the referred documents.

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney
/s/
MADELYN E. JOHNSON, DC Bar #292318
Assistant United States Attorney
U.S. Attorney's Office, Rm  E4114
555 4th Street, N.W.
Washington, D.C.  20530
*(202) 514-7135*

CERTIFICATE OF SERVICE

I CERTIFY that on March 3, 2008, plaintiff was served with a copy of the

foregoing Notice of Filing and accompanying Declaration of William C. Little, Jr. via

first-class mail postage prepaid and addressed:


Demetrius McClaughlin
#41297-018
FCC Coleman-USP
P.O. Box 1033
Coleman, FL   33521-1033


_____/s/_____
Madelyn E. Johnson
Assistant U.S. Attorney
555 4th Street, N.W., Rm. E4114
Washington, D. C.  20530
(202) 514-7135

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEMETRIOUS MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00960 RMC |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF WILLIAM C. LITTLE, JR.**

I, William C. Little, Jr., hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.  The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

1. I am an Attorney admitted in and a member in good standing in the Bar of the State of Pennsylvania.

2. I am currently employed as a practicing attorney by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), where I am assigned to the Office of Chief Counsel, Administrative Law Section.

3. Within the DEA Office of Chief Counsel, I am an attorney whose primary responsibilities are

matters involving the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and Privacy Act (PA),

5 U.S.C. § 552a, litigation in which DEA is an interested party.  I have served in this capacity

since about April 26, 1999.  In addition, between April 26, 1999 and November 18, 2003, I

served as the DEA Privacy Officer.

4. As an attorney, I have been involved in FOI/PA since 1994.  I have received formal, informal

and on the job training in the FOI/PA, and the administration of Federal records and PA Systems

of Records.

5. I am familiar with the Department of Justice (DOJ) and DEA policies, practices and

procedures regarding the administration of, and processing and release of information requested

under the FOIA and PA, and DEA PA Systems of Records.

6. Within the DEA Office of Chief Counsel, I am responsible for review, for litigation purposes

in cases to which I am assigned, of both the initially processed and appealed, FOI/PA requests

that are received by DEA, and to provide litigation support for matters arising under the FOIA

and the PA in which DEA is an interested party.

7. I prepare, and review and supervise the preparation of affidavits, declarations, responses to

discovery motions, interrogatories and other court pleadings, and conduct all necessary legal

2

research related to issues arising during the course of the prosecution or defense of FOI/PA

actions in which DEA is an interested party.


8.  As the DEA Privacy Officer, I became familiar with, and provided support and guidance to

DEA employees and offices in matters relating to DEA's administration of the Privacy Act and

the maintenance of Privacy Act Systems of Records.  The support also included the

administration of DEA's Privacy Act System Notices, and training of DEA employees in FOIA

and PA.  In addition, I adjudicate Requests for Amendment of Records submitted to DEA, under

the Privacy Act and other Federal statutes.


9.  The purpose of this declaration is to respond to the Court's *Order* and *Memorandum Opinion*

dated January 15, 2008, and supplements the previous declarations of Leila Wassom dated March

8, 2007, and October 4, 2007,[1] submitted in support of *Defendant's Motion for Summary*

*Judgment*, filed March 7, 2007.


10.  In preparing this declaration, I read and am familiar with the complaint in the above entitled

action, the *Defendant's Motion for Summary Judgment*, filed March 7, 2007,  and the *Plaintiff's*

*Motion in Opposition and Objection to Defendant Motion to Dismiss or, in the Alternative*

*Summary Judgment* filed April 5, 2007, in which the plaintiff claims that DEA acted in bad faith

---

[1] The initial declaration was signed by Ms. Wassom on March 7, 2007, and attached to
*Defendant's Motion for Summary Judgment.*  However, subsequent to the filing it was
determined that it was necessary to correct information found in paragraph 13 of the declaration.
Therefore, a revised declaration dated March 8, 2007, was prepared.  The declaration was filed
attached to an Errata on October 4, 2007.

3

in its duty to search its Tampa, Florida office, stating that DEA overlooked 270 pages and materials responsive to his request.  He bases his assertion on a notice from the Executive Office for the United States Attorneys (EOUSA) that 270 pages of material were referred to DEA for a direct response.

11.  As the attorney assigned to this matter, I personally conducted a litigation review of the contents of the file and records maintained by DEA Freedom of Information Operations Unit (SARO).  SARO is the DEA office responsible for the initial response to, the search for, and the processing and release of information requested under FOIA and PA.

12.  Once an FOI/PA action is filed in Federal court, the responsibility to respond to and perform any actions regarding the processing of a FOI/PA request is the DEA attorney assigned.   As the attorney assigned this matter, I personally conducted a litigation review of the file and the records maintained by SARO.  A litigation review is the examination of the actions taken during the initial processing of a FOI/PA request and taking any necessary remedial action.

13.  I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.  The contents of the SARO file include the results of the query of the DEA Narcotics and Dangerous Drug Information System (NADDIS)[2] conducted on December 15, 2006, the plaintiff's original request, memoranda documenting the actions taken related to the

---

[2] A description of NADDIS is contained in paragraph 25, below.

processing of the request and 31 pages of material deemed by SARO as responsive to the

plaintiff's request.

## EOUSA REFERRAL

### Summary of Correspondence and Administrative Action

14.  By letter dated April 25, 2007, the Executive Office for the United States Attorneys

(EOUSA), Freedom of Information and Privacy Staff (EOUSA), referred 270 pages[3] of material,

one (1) CD-R and one (1) audio cassette tape to the Drug Enforcement Administration for a

direct response to the plaintiff.  Utilizing a form letter, EOUSA stated that the basis for the

referral was that the pages "originated" with DEA.  A copy of the April 25, 2007, EOUSA letter

is attached as Exhibit E.

15.  Despite the assertion that the documents "originated" with DEA, an examination of the

materials shows that only 18 pages originated with DEA, 123 pages were unmarked and

unidentified photographs and 56 pages were documents that, on their face, originated with the

Pasco County Sheriff's Office.  Given the nature of the materials, a separate basis for referring

the documents existed upon which DEA acted to process.

16.  In my experience as it relates to the referral of records to DEA by EOUSA, DOJ Agency

Rules, 28 C.F.R. § 16.4(c), are followed.  DOJ Rules direct that when a request for information is

_____

[3] For a description of the material see paragraphs 20 and 21, below.

received by a component for records in its possession, the receiving component makes a

determination regarding whether another component or agency is best able to process the records.

In the case of law enforcement information, the Rules direct that the records are referred to the

component or agency that originated the information, if the agency is subject to the FOIA.


17.  Since the Pasco County Sheriff's Office is not a Federal agency and, therefore, not subject to

the FOIA, and given the nature of the material, EOUSA made the determination that DEA was

best able to make release determinations.   Thus, the material was processed by DEA and

nonexempt materia was released to the plaintiff.


18.  By letters dated October 2, 2007, DEA informed the plaintiff that, of the 270 pages referred,

73 were duplicates, one (1) page was blank.  DEA released portions of 41 pages, 122 pages in

their entirety, forwarded the CD-R to the plaintiff's Unit Manager, and 33 pages and the audio

cassette were withheld in their entirety.  Copies of the October 2, 2007, DEA letters are attached

as Exhibits F and G.


## Description of Material Referred by EOUSA


19.  Of the 270 pages received from EOUSA, 73 pages were duplicates and one (1) page was

blank.  Of the remaining 196 pages of non-duplicative materials, 18 pages originated with DEA

or were connected with DEA personnel; 123 pages were copies of unmarked and unidentified

photographs; and, 55 pages were documents that, on their face, originated with the State of

Florida, Pasco County Sheriff's Office.


20.   The 18 pages originating with DEA consisted of:

(a).  a one-page undated curriculum vitae of a DEA chemist;

(b).  a one-page DEA Fax Transmittal Sheet dated March 2, 2004;

(c).  a one-page DEA memorandum dated June 3, 2003,  from the Laboratory Director, Southeast Laboratory, to the Tampa District Office, Subject: Methamphetamine Production Capability for G6-02-0161

(d).  one (1) DEA Form 7A, Acquisition of Non-Drug Property and Regulatory Seizures dated August 13, 2002;

(e).  three (3) DEA Forms 7; Report of Drug Property Collected, Purchased, or Seized, dated July 25, 2002;[4]

(f).  a one-page DEA Report of Investigation (ROI), DEA Form 6, dated July 27, 2002;[5]

(g).  a one-page DEA ROI dated July 30, 2002 ;[6]

(h).  a five-page DEA ROI dated July 25, 2002;[7]

---

[4] Two of the three reports, dated July 25, 2002, were previously processed.  The pages are designated as pages 5 and 6 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

[5] The report was previously processed. The page is designated as page 26 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

[6] The report was previously processed.  The page is designated as page 25 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

[7] The report was previously processed.  The report is designated as pages 27 - 31 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

(I).  pages 1, 2, and 3 of a five-page DEA ROI dated October 30, 2003;[8] and

(j)  page 2, with excisions, of a five-page DEA ROI dated July 25, 2002;[9]

21.  Besides 123 pages of unmarked and unidentified photographs, the remaining 56 pages consist of the following:

(a).  a one-page Pasco County Sheriff's Office fax cover sheet to the U.S. Attorney's Office dated October 21, 2003;

(b).  a one-page Justice Information System- Charge Dispo data printout;

(c).  a one-page Pasco County Complaint Affidavit;

(d).  a one-page Federal Bureau of Investigation, National Criminal Information Center print-out related to a third-party;

(e).  a five-page Pasco County Florida Criminal History Summary from the Florida Department of Law Enforcement dated May 30, 2003;

(f).  a four-page Pasco County Florida Criminal History Summary from the Florida Department of Law Enforcement dated March 5, 2004 with notations;

(g). a four-page Application and Affidavit for Search brought in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida;

(h).  a two-page Search Warrant granted August 12, 2002, in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida;

(I).  a one-page Search Warrant Return granted August 13, 2002, in the Circuit Court for the Sixth Judicial Circuit in and for Pasco County, Florida;

---

[8] The pages of the report were previously processed.  The report is designated as pages 13, 14 and 15 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

[9] The complete page was previously processed.  The page is designated as page 28 of the Vaughn, submitted as Exhibit D of the Wassom Declaration dated March 8, 2007.

(j). an eight-page Pasco County Sheriff's Office transcript of a telephone conversation with a confidential source;

(k). a six-page reiteration of the Pasco County Sheriff's Office transcript of the telephone conversation with a confidential source, described in subparagraph (j), above;

(l). an eight-page Pasco County Sheriff's Office investigative report continuation;

(m). a one-page excised version of page 3 of 8 of the investigative report described in subparagraph (m), above;

(n). a one-page excised version of page 4 of 8 of the investigative report described in subparagraph (m), above;

(o). a three-page Pasco County Sheriff's Office Offense Incident Report; and,

(p). a nine-page Pasco County Sheriff's Office Offense Incident Report with excisions.


## ADEQUACY OF SEARCH


22. The plaintiff's letter was interpreted as a request for criminal investigative records held by DEA that referenced or related to the plaintiff, or that referenced the plaintiff's name. Criminal investigative records about the plaintiff maintained by DEA were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.


23. No other system of records maintained by DEA is reasonably likely to contain information responsive to the plaintiff's request.


24. After receipt of the initial plaintiff's request, a query of NADDIS was conducted on December 15, 2006, by a FOIA specialist assigned to SARO. As a result of the NADDIS query,

a single investigative case file, DEA Investigative Case File No. G6-02-0161, was identified as the only investigative case file that contained records responsive to the plaintiff's request.

25. NADDIS is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to the investigative case files, by investigative case file number, and a particular DEA Report of Investigation (ROI), DEA Form-6 and 6a, or other documents by date, that contain information regarding a particular individual or subject. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

26. The result of a NADDIS query is a listing of the investigative case files in which an individual is mentioned, and the dates or reports or other documents contained in the file in which the individual is mentioned. At the time of the processing of the plaintiff's request, for each investigative case file number, DEA maintained a headquarters file and a corresponding field office file.

27. DEA does not index investigative information based on a court assigned criminal case docket number. Thus, the plaintiff's allusion to "case #8:03-CR-226-T-17MSS" was of no use in identifying or retrieving records maintained by DEA.

28. Upon receipt of the plaintiff's complaint on about January 18, 2007, a litigation review was conducted. At the time the plaintiff's request was being processed by SARO, only the

information maintained in headquarters was retrieved and processed. Based upon the plaintiff's

request, it was surmised, during the litigation review, that information could exist in the field file

that was not found in or forwarded to the DEA Headquarters.

29. On January 24, 2007, the DEA Tampa District Office was contacted and it was requested

that a check be made of the field file to determine whether there were any reports or information

maintained in the field file that had not been forwarded for inclusion in the headquarters file.

30. On about February 22, 2007, four (4) additional pages, consisting of a fingerprint card, one

page containing two photographs of the plaintiff and a two-page DEA Personal History Report,

DEA Form 202, were received.[10]

31. Thus, between December 15, 2006 and February 23, 2007, both the DEA Headquarters and

Tampa District Office files were searched. A total of 36 pages of responsive material was

retrieve and process. There was no indication that any other investigative file maintained by

DEA contained information related to the plaintiff and no other location within DEA was

reasonably likely to maintain records responsive to the plaintiff's request.

32. After receipt of the Plaintiff's *Opposition* and the review of the EOUSA material, the DEA

Tampa District Office was contacted again on May 9, 2007, and both the DEA Headquarters and

field investigative files were reviewed.

_____

[10]*See* pages 32 through 35 of the released made to the plaintiff dated February 26, 2007.

33. Of the 18 pages of non-duplicative material referred by EOUSA that are DEA records or related to DEA personnel, four (4) pages had not been uncovered during the course of the prior searches. The remaining 14 pages, described in paragraph 20, sub paragraphs f-j, were identified, processed and, except where exemptions applied, release to the plaintiff in response to his direct request to DEA. Only two (2) pages were contained in either the field and/or Headquarters files. The remaining two (2) pages were not located in the investigative file and their source is unknown.

34. The two (2) pages that were contained in the DEA files were a single DEA Form 7[11] and a one-page DEA memorandum dated June 3, 2003.[12] Although contained in DEA Investigative Case File No. G6-02-0161, the pages, at the time of the searches, were not identified as responsive.

35. The pages were not identified as responsive for three (3) reasons. First, DEA does not maintain dossier type files. Therefore, simply because the documents were contained in the file, it could not be concluded that the information related to the plaintiff. Second, since the he plaintiff's name was not used as the file title of DEA Investigative File No. G6-02-0161, his name did not appear on every report or document contained in the file, making it impossible to determine that the documents were responsive to the plaintiff's request. Finally, since neither the single DEA Form 7 nor the memorandum mentioned the plaintiff and the documents, on their

---

[11]A description of the document is contained in paragraph 26(d), above.

[12]A description of the document is contained in paragraph 26(c), above.

12

face, did not appear to related directly to the plaintiff, they were not indexed in or identified in

NADDIS. Thus, the documents were not identified in any way as being related to the plaintiff.

Consequently, the documents were not identified during the search of the file as responsive to the

plaintiff's request.

36. Neither of the remaining two (2) pages, consisting of a curriculum vitae and a DEA facsimile

transmittal cover sheet, were contained in either the field or headquarters investigative case files

at the time the searches were conducted. The documents are not investigative records that would

normally be maintained in a DEA investigative file. Although, the documents would serve a

function for the AUSA prosecuting the case, they would serve no an investigative purpose for

which they would be maintained to document any DEA investigative efforts.

### Analysis of Referred Material

37. Notwithstanding, the fact that 270 pages were referred to DEA by Executive Office for

United States Attorneys (EOUSA), standing alone, does not evidence bad faith. The plaintiff's

assertion of bad faith is apparently based upon mere speculation and his lack of knowledge of

the function, nature and identity of records maintained by DEA and/or EOUSA, the procedures

employed by Federal agencies in the processing of a FOIA request and what the FOIA requires.

38. The records not being in DEA files can be explained by criminal trial and records

management practices. DEA not providing the material to the plaintiff, pursuant to his direct

request, is a function of the FOIA and procedures employed by DOJ, and EOUSA and DEA as components of the Department.

39.  With regard to trial practices and procedures, DEA field offices routinely provide information contained in the DEA field investigative case files to USAO and state and local agencies for purposes of prosecution.  The information is often retained by the USAO or state and local prosecutors until of the prosecution or prosecutions are completed.

40.  At the time the plaintiff's request was processed, there were two (2) individuals who were fugitives.  Except for copies of DEA reports that were retained in the field file, all documents relevant to the prosecution of the plaintiff and other individuals, contained in the field file, had been provided to the AUSA assigned.  The information had not been returned to the field file at the time the searches were conducted, since two (2) fugitives remained to be prosecuted.

41.  For the purposes of the FOIA and records management, EOUSA and DEA are separate entities.  *See* 28 C.F.R. §§ 0.1, 0.21, 0.100, 0.103 and 16.4.  As separate entities, under the FOIA an agency is not required to obtain records not in its possession at the time a request is processed in order to satisfy a FOIA request.  Thus, even though the DEA offices that conducted the searches were aware that records had been provided to USAO, DEA was not obligated to reacquire the DEA records to satisfy the plaintiff's FOIA request.

14

42. Similarly, although the plaintiff requested information connected with the Pasco County

Sheriff's office investigation, even if DEA personnel were aware that information may have been

maintained by the USAO, DEA was not required to obtain the information from either the Pasco

County Sheriff's Office or the USAO to satisfy the plaintiff's request.


43. The existence of the records in the files of the USAO that did not, on their face, originate

with DEA can be explained. The function and purpose of the files, and the source of the records

contained in the file accounts for the existence of records in their files that are not, or may not be

maintained, in the DEA investigative case files. The files processed by EOUSA is the file

maintained by the USAO that prosecuted the plaintiff.


44. The files maintained by a U.S. Attorney reflect determinations made regarding the

prosecution offenses. The file consists of information that is required by criminal procedure and

what is relevant at trial. The records relate to matters that have arisen during the course of a

prosecution and are for the purpose of prosecution. The contents of the files may be information

obtained from any number of sources, including Federal, state and local investigative agencies,

the attorney's work product and other sources.


45. The records in DEA investigative case files, on the other hand, are maintained to document

efforts associated with the investigation of criminal offenses. The records are those created and

received by DEA during the course of an investigation or information received in the course of

business. The information contained in the files maintained by the USAO may exceed that

15

which is contained in the DEA investigative case file. Thus, the information contained in a U.S.

Attorney's file will differ from that of a DEA investigative case file, even if the case relates to a

controlled substance.

46. The intervention of DEA in the matter that gave rise to the plaintiff's conviction for

conspiracy to manufacture Methamphetamine and possession of a listed chemical began on

about July 17, 2002, after the plaintiff's arrest by deputies of the Pasco County Florida

Sheriff's Department. DEA was contacted when a "boxed-up" methamphetamine lab was

discovered in the vehicle being operated by the plaintiff. Up until the arrest of the plaintiff, and

the discovery and cleanup of the clandestine laboratory, the investigation of the plaintiff was

conducted by state and local law enforcement officials. Thus, the Pasco County Sheriff's

Department would have gathered investigative information prior to July 17, 2002, and, since

jurisdiction was not exclusive, the Sheriff's Department did amass information not in the

control and custody of DEA.

47. The documents referred to DEA indicate that material was being provided directly to the

AUSA assigned to the prosecution of the plaintiff by the Pasco County Sheriff's Department.

A DEA Fax Transmittal Sheet [13] to the USAO, designated as page 125 in the referred material,

---

[13] Page 125 of the EOUSA referral was withheld in its entirety pursuant to FOIA
Exemption (b)(5), 5 U.S. 552(b)(5), which exempts from mandatory release "inter-agency or
intra-agency memorandums or letters which would not be available by law to a party... in
litigation with the agency." This exemption applies to records that would normally be protected
pursuant to a civil discovery privilege. In the instant case, DEA invoked Exemption (b)(5) to
withhold page.

contained a statement that a Pasco County Sheriff's detective would deliver materials to an AUSA. A Pasco County Sheriff's Office Fax Transmittal[14] to the U.S..Attorney's Office indicates that three (3) pages were attached.

48. Even though the exact material cannot be identified, taken together, the DEA Fax Transmittal Sheet and the Pasco County Sheriff's Office facsimile cover page indicate that records were provided directly to an AUSA by the Pasco County Sheriff's Office. Although the referred material does not provide information regarding how the AUSA assigned to the case acquired all 270 pages that were referred to DEA, the pages are evidence that the AUSA possessed records belonging to the Pasco County Sheriff's Office that would not necessarily be records belonging to, under control and custody of or that originated with DEA.

49. The remaining documents, a one-page undated curriculum vitae of a DEA chemist and a one-page DEA Fax Transmittal Sheet dated March 2, 2004, are not in the investigative case files or records normally maintained in IRFS. However, these documents would have been provided to the AUSA assigned to the case in the course of preparing the case for trial for purposes of prosecution.

50. The facsimile is merely DEA communicating with the AUSA and the curriculum vitae could have been provided by a DEA chemists who was a prospective witness.

---

[14]The document is page 142 of the referred material.

51. With regard to the audio cassette tape included in the referral, the tape was reviewed on or about May 8, 2007. The review indicates that the material described in paragraph 22, subparagraph (j) and (k), above, is the transcription of the audio tape. The transcript is memorialized on Pasco County Sheriff's Department letter head. Thus, it can be reasonable assumed that the information contained on the tape and transcrip was information gathered and maintained by the Sheriff's department.

52. It is, however unclear what the source was of the source of the 123 pages of unmarked and unidentified photographs. It is certain that these photographs, along with the 56 pages of Pasco County Sheriff's Department records, were not contained in DEA investigative files at the time the searches were conducted.


I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_March 3 2008_
DATE

_William C. Little, Jr._
William C. Little, Jr.
Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C. 20537

18

# EXHIBIT E

**U.S. Departr    t of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.,  Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
*(202) 616-6757   FAX:  616-6478 www.usdoj.gov/usao)*

To: **Katherine L. Myrick, Chief/DEA**

Requester:  **Demetrius McLauglin**          Requester Number:  **06-3274**

APR 2 5 2007

Subject of Request: **Self/FLM**

Dear FOIA/PA Contact Person:

        The enclosed Freedom of Information Act/Privacy Act request was received by this office.  The paragraphs checked below apply:

1.    [  ]    As your office may have records responsive to this request, we are referring it to you for a direct response to the requester.

2.    [ X ]    While processing this request, we located the enclosed records which originated in your office.  These records were found in the U.S. Attorney's Office files and may or may not be responsive to the request.  We are referring  **270**  page(s) of material,  **1**  CD-R,  **1**  cassette tape and a copy of the request to you for a direct response to the requester.

3.    [ X ]    This office is also providing  _____**4**_____  page(s) of documents under a cover page titled "Background Information".  The attached records are provided to your agency to assist in processing your records.  These are <u>not</u> part of the referred records and should be kept as administrative records in this referral.

        A copy of our final determination letter is also enclosed for your reference.  Please note we have charged the requester $_____ for search/duplication costs incurred in the processing of this request.

        We have notified the requester of this referral.

        If you have any questions about this matter, please contact the FOIA/PA processor named below.

                                        Sincerely,

                                        William G. Stewart II
                                        Assistant Director

Name: Janet Harper
Phone: (202) 514-4359
Enclosure(s)

2007 MAY -7  AM 9: 20

SARD
OPERATIONS UNIT

Form No. 007 - 3/07

# EXHIBIT F



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

_www.dea.gov_

OCT 0 2 2007

Mr. Demetrius McLaughlin
FCC Coleman - USP
P.O. Box 1033
Coleman, FL 33521-1033

Re: _Demetrius McLaughlin v. Drug Enforcement Administration,_  C.A. 06-0960
    DEA Request No. 07-0733-P

Dear Mr. McLaughlin:

Enclosed please find portions of 41  pages and 122 pages in their entirety.  These pages are
released in response to the 270 pages referred to the Drug Enforcement Administration (DEA)
by the Executive Office for United States Attorneys (EOUSA) letter dated April 25, 2007.  Of
the 270 pages referred by EOUSA, 73 pages were duplicates and one (1) page was blank.
Thus, DEA processed 196 pages of which, in addition to the 163 pages that are released, 33
pages are withheld in their entirety.  Information is withheld pursuant to Freedom of
Information Act (FOIA) exemptions (b)(2), (b)(5), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and
Privacy Act (PA) exemption (j)(2).  The CD-R is released in its entirety.  However, it is not
included herein.

The cassette is withheld in its entirety.  During the review process, it was determined that
the tape was previously transcribed on two occasions.  The two transcripts are included on
pages 161 through 168 and pages 169 through 174 of the referred pages.  The transcript pages
were withheld in their entirety pursuant to FOIA exemptions (b)(7)(C), (b)(7)(D), and (b)(7)(F)
and PA exemption (j)(2).  Likewise, the cassette tape is also withheld.

With regard to the referred CD-R, under U.S. Department of Justice, Federal Bureau of
Prisons, Program Statement No. 1315.07, dated November 5, 1999, and No. P5580.07, dated

Demetrius McLaughlin                                                                                      Page 2
October 1, 2007

September 28, 2005, you are not able to directly receive a copy of the CD-R. Since it is
impractical to print to paper the video images that are contained on the CD-R, it will be
forwarded to you, under separate cover, in care of your unit leader.

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File
    Document name: H:/wclittle/MyDocuments/litigation/cases/L-P/McLaughlin/refrelLtr.wpd:10/02/06

# EXHIBIT G



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

---

*www.dea.gov*

OCT 0 5 2007

F. Santos, Unit Manager
PO Box 1023
FCC Coleman - USP I
Coleman, FL 33521-1033

    Re: *Demetrius McLaughlin v. Drug Enforcement Administration,* C.A. 06-0960
      DEA Request No. 07-0733-P

Dear Mr. Santos:

    Enclosed please find one CD-R. The content of the CD-R is response to a Freedom of
Information Act (FOIA) request, dated September 18, 2006, made by Demetrius McLaughlin
to the Executive Office for United States Attorneys (EOUSA). The CD-R was part of a referral
of information by EOUSA to the Drug Enforcement Administration (DEA). It has come to my
attention that, under U.S. Department of Justice, Federal Bureau of Prisons, Program Statement
N0. 1315.07, dated November 5, 1999, and No. P5580.07, dated September 28, 20005, Mr.
McLaughlin is unable to receive directly the CD-R. Also, it is impractical to print to paper the
video images that are contained on the CD-R. Thus, to satisfy the requirement of the FOIA to
make information available, the item is forwarded in your care for Mr McLaughlin to have
access, if possible, to the content.

    The CD-R has been reviewed and there is nothing in the content that is personal to Mr.
McLaughlin. The content of the CD-R is a video of the clean-up of the hazardous waste site.
The waste site was created as the result of the operation of a clandestine laboratory. The
images are that of the site as individuals identify certain objects, the securing of items and their
disposal. No one can be identified, since everyone that appears is wearing protective clothing.
After review by DEA, nothing in the content that could be withheld under the FOIA. Thus, the

F. Santos, Unit Manager                                                    Page 2
October 5, 2007

content may be made available to Mr. McLaughlin in its entirety, subject to any limitations or conditions imposed, and availability to a means of viewing allowed by the Federal Bureau of Prisons.

If you have any questions or for further assistance in this matter, please feel free to contact me by telephone at (202) 353-9680. Mr. Jeff Campbell, who provided me your name and address, may also be able to assist. He can be reached there at the facility at 352-689-3022.

Thanking you in advance for your anticipated courtesy and cooperation,

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File _____ 10/5/07
    Jeff Campbell FBOP
    Document name: H:/wclittle/MyDocuments/litigation/cases/L-P/McLaughlin/UnitrelLtr.wpd:10/05/06